382 Pa. 521 (1955)
Schmidt, Appellant,
v.
Philadelphia Zoning Board of Adjustment.
Supreme Court of Pennsylvania.
Argued April 26, 1955.
June 27, 1955.
*522 Before STERN, C.J., STEARNE, JONES, BELL, CHIDSEY and ARNOLD, JJ.
Thomas A. Matthews, for appellant.
Matthew W. Bullock, Jr., Assistant City Solicitor, with him Herbert M. Linsenberg, Assistant City Solicitor, and Abraham L. Freedman, City Solicitor, for appellee.
*523 Francis H. Scheetz, with him J.B.H. Carter, and Pepper, Bodine, Frick, Scheetz & Hamilton, for intervenor, appellee.
OPINION BY MR. JUSTICE JONES, June 27, 1955:
The court below dismissed an objecting property owner's appeal from an order of the Zoning Board of Adjustment of Philadelphia sustaining the issuance by the City's administrative zoning officer of a use registration permit to the applicant (and present intervenor) for the construction of an office and factory on property in the Somerton section of the 35th Ward of the City. The objecting property owner has appealed.
The sole question involved is whether the City's amendatory zoning ordinance of 1952, which reclassified the property in question as available for industrial uses, constituted "spot-zoning" and was, therefore, invalid as an unconstitutional exercise of the City's police power.
The subject property is owned by the American Meter Company and consists of a substantially rectangular tract of unimproved land of 7 1/2 acres abutting, on its north side, on Philmont Avenue which, in general, runs east and west. For present convenience, the property may be described as follows: Beginning at a point on Philmont Avenue some 859 feet west from the southwest corner of Philmont and Bustleton Avenues, thence west along Philmont Avenue for a distance of approximately 877 feet and having a depth of some 385 feet between Philmont Avenue and the right of way of the New York division of the Reading Railroad on the south.
On the eastern side of this property there is another tract of 4 1/2 acres of unimproved land (also owned by the American Meter Company) which is bounded on the north by Philmont Avenue, on the east by Bustleton *524 Avenue and on the south by the right of way of the Reading Railroad. Opposite both of these properties, i.e., across the railroad, there is a still larger tract of unimproved land which is bounded on the north by the railroad's right of way, on the east by the village of Bustleton, on the south by Audubon Avenue (as yet unopened) and on the west by Byberry Road.
Under Philadelphia's basic zoning ordinance of 1933, all three of the above described properties were zoned General Industrial and so remained for a period of eighteen years. Following studies by the City Planning Commission and recommendations by that body and by the Zoning Board of Adjustment, City Council, on July 3, 1951, passed an amendatory ordinance, which the Mayor duly signed, changing the zoning classification of the properties above described from General Industrial to "B" Residential. A year later, however, viz., on July 10, 1952, City Council enacted, and the Mayor duly signed, a further amendatory ordinance, effective August 5, 1952, which reclassified the 7 1/2 acre tract, herein first above described, as General Industrial instead of "B" Residential. This action was likewise taken on favorable recommendations by the City Planning Commission and the Zoning Board of Adjustment.
In the situation then obtaining, the administrative zoning officer on the application of the American Meter Company issued to the applicant on April 1, 1954, the use registration permit above mentioned for the erection on the 7 1/2 acre tract of a plant for the manufacture of meters. The issuance of the permit was protested by residents of the area who appealed the action of the zoning administrator to the Board of Adjustment. After hearings, at which testimony was taken, the Board sustained the issuance of the permit. *525 Thereafter John G. Schmidt, one of the objectors, filed with the court below his petition for a certiorari to the action of the Board of Adjustment. The court approved the petition, and a certiorari duly issued. On petition, the American Meter Company was formally allowed to intervene in the proceeding. The matter later came on for a hearing before the court below which, after taking additional testimony, sustained the action of the Board of Adjustment. This appeal by Schmidt, individually, followed.
At the outset, it is important that the procedural situation be clearly fixed in mind. The matter is here on certiorari. The Act of May 6, 1929, P.L. 1551, 53 PS § 3822 et seq., empowering cities of the first class to enact zoning ordinances, makes no provision for an appeal from an order of a court of common pleas in a case arising under such an ordinance. The statute being silent as to a right of appeal to a higher court, this case is necessarily before us as on certiorari in its broadest sense: Fleming v. Prospect Park Board of Adjustment, 318 Pa. 582, 583-584, 178 A. 813. As stated by Mr. Chief Justice STERN in Walker v. Zoning Board of Adjustment, 380 Pa. 228, 230, 110 A. 2d 414,  "Since the Act of May 6, 1929, P.L. 1551, which deals with zoning ordinances of cities of the first class, does not provide for any appeal from the court below our review is merely as on certiorari and we examine the record only to see whether there is any evidence to sustain the findings and whether the proceeding is free from a violation of positive law and any flagrant abuse of discretion." And, that is so whether or not testimony on the issue was taken in common pleas court. The scope of our inquiry is determined by the breadth of the certiorari issued by this court and not by the power exercised by the court below. Nor is the extent of the review influenced or controlled by differences *526 in the specifications of the various Municipal Zoning Acts for determining whether a board of adjustment's decision in a particular case was arrived at correctly. The differences are more semantic than substantial. The Walker case, supra, implicitly recognized that the different standards judicially stated for testing the merit of a zoning board's order on appeal therefrom to a court of common pleas involve identical inquiries. See, also, Rolling Green Golf Club Case, 374 Pa. 450, 458, 97 A. 2d 523, where Mr. Justice BELL, speaking for this court, said that "On appeal from a decision of a Court of Common Pleas in a zoning matter the case comes before an appellate Court as on certiorari, and where there is adequate evidence to support the findings of the Court below and the proceeding is free from error of law and there has been no manifest abuse of discretion, the decision will not be reversed," citing Dooling's Windy Hill v. Springfield Township, 371 Pa. 290, 89 A. 2d 505; and Lindquist Appeal, 364 Pa. 561, 73 A. 2d 378.
That brings us to a consideration of the supportable findings in the instant case insofar as they bear upon whether the court below erred in concluding, as a matter of law, that the amendatory ordinance of July 10, 1952, reclassifying the subject property as Industrial was a constitutionally valid exercise of the City's zoning power and not "spot-zoning".
The property was plainly unsuited for residential purposes. Evidence which the court below expressly accredited discloses that "The slope of the land, coupled with its location in a low spot, results in large concentration of drainage water accumulating in the area of the railroad embankment. The grade of the land, too, would prevent connection by residential structures to any existing city sewage lines. That this residential sewage problem could be eliminated by the *527 installation of some type of seepage drainage, was denied by expert witnesses for Applicant, because the porosity of the soil and the proximity of the water table to the surface would likewise impede any substantial subterranean drainage of sewage water from residential structures." The court further found that the dwelling uses in the vicinity existed only on the "valley" walls and hilltops north of Philmont Avenue and south of unopened Audubon Avenue and in a small area lying east of Bustleton Avenue and south of the railroad.
On the other hand, the property was ideally situated for industrial purposes, being located between an operating railroad and a main thoroughfare for vehicular traffic, viz., Philmont Avenue. There were, moreover, in the affected area a woodworking mill, a building supply company, a railroad station and a freight car storage track along the north side of the railroad right of way from Bustleton Avenue westward for the entire length of the subject property. It is true that these industrial uses had existed long prior to the City's enactment of its zoning ordinance and, under any zoning classifications, would qualify as nonconforming uses. But, their presence no less militates against the use of property in the immediate vicinity, such as the applicant's, for residential purposes. The findings of the court below are fully supported by the evidence and well justify the conclusion that the most appropriate use of the property in question is industrial.
Nor did the court err in concluding that the 1952 amendatory ordinance was not "spot-zoning". To reclassify the permissible use of the 7 1/2 acre tract by the very designation which, but for a brief intervening change by ordinance, it had borne for years, along with the other two properties hereinabove described, *528 was in no fair sense tantamount to a singling out of one property for special zoning treatment without consideration of the topography or character of the district and the property's peculiar suitability for particular uses. On the contrary, the reclassification in the instant case fulfilled those criteria as the lower court's competent findings plainly reveal. In Gratton v. Conte, 364 Pa. 578, 584, 73 A. 2d 381, which, by interesting coincidence, involved a rezoning of 7 1/2 acres, it was said for this court that "While a piecemeal method of altering zoning classification is frequently undesirable practice it may be the only way of protecting rights which must be recognized, and, while all zoning regulations must be in accord with the general comprehensive plan, they should be made, as the statute provides, with a view to encouraging the most appropriate use of the land." And, that is what was done here.
While the only zoning ordinance with which this case is concerned is the 1952 amendment covering the 7 1/2 acre tract, it is not entirely without significance that on August 20, 1952, the above described tract immediately south of the railroad right of way was rezoned Limited Industrial and on July 11, 1954, the 4 1/2 acre tract was reclassified as General Industrial and, at the same time, the animal hospital property with combined residence, which abutted the 7 1/2 acre tract on the west and had formerly been zoned "A" Residential, was also rezoned General Industrial. Thus, at the time this case was before the court below the 7 1/2 acre tract, except for Philmont Avenue on the north, was entirely surrounded by properties zoned Industrial.
The residents of the area, who object to the reclassification by the ordinance of July, 1952, acquired no vested right to a continuation of the change from General Industrial to "B" Residential wrought by *529 the ordinance of July, 1951, in respect of the property here involved. In Hollearn v. Silverman, 338 Pa. 346, 350, 12 A. 2d 292, Mr. Justice LINN pertinently observed that "The ordinance of 1933 fixing the boundaries of the zones did not result in a contract with plaintiffs preventing the city from subsequently changing the boundaries if the city found it desirable to change them: Ayars v. Wyoming Valley Hospital, 274 Pa. 309, 118 A. 426." The City's power further to amend its zoning regulations, even in respect of the changed uses of the very same property, endured unimpaired after the 1951 amendment. The City's right, from time to time, to amend, supplement, modify or repeal its zoning regulations, restrictions and boundaries was expressly reserved to it by Section 5 of the enabling Act of 1929, supra.
In any view, the ordinance of July 10, 1952, was a valid exercise of City Council's zoning power under the enabling Act of 1929, supra.
The order of the court below is affirmed; costs on this appeal to be borne by the City.