Boyle Appeal.

Argued April 15, 1955. Before HIRT, ROSS, GUN-THER, WRIGHT, and WOODSIDE, JJ. (RHODES, P. J. and ERVIN, J., absent).

*Patrick M. O'Donnell,* for appellants.

*Gilbert E. Morcroft,* with him *Peter Cooper,* for Material Service, Inc., appellee.

OPINION BY WOODSIDE, J., September 28, 1955:

This is another case in which an effort is being made to prevent the erection of a "shopping center" by attacking a zoning ordinance.

It is an appeal of one property owner from the dismissal by the Court of Quarter Sessions of Allegheny County of the complaint of a number of property owners of the Borough of Crafton questioning the validity of that Borough's Ordinance No. 1070 passed February 10, 1953 which amends the zoning ordinance of 1926 by changing the classification of a certain tract from "Residential District D" to "Commercial District."

The complaint was filed pursuant to section 1010 of The General Borough Act of May 4, 1927, P. L. 519, as amended, (53 PS §12900) which provides as follows:

"Complaint as to the legality of any ordinance or resolution may be made to the court of quarter sessions, upon entering into recognizance with sufficient security to prosecute the same with effect and for the payment of costs, by any person aggrieved, within thirty days after any ordinance or resolution takes effect, and *the determination and order of the court thereof shall be conclusive.* In cases of ordinances effecting annexation of territory or laying out streets over private lands, the court shall have jurisdiction to review the propriety as well as the legality of the ordi-

nance." (Italics ours)

For the reasons set forth in the opinion of Judge. ERVIN in *Plum Township Annexation Case,* 178 Pa. Superior Ct. 376, 116 A. 2d 260 (1955), we must consider the case on a narrow certiorari. Thus we cannot consider the merits of the controversy, but only the jurisdiction of the court below and the regularity of the proceedings in it.

As the jurisdiction of the court below and the regularity of its proceedings are not questioned in this appeal its order must be affirmed.

Were we to treat the appeal as a broad certiorari we would, nevertheless, arrive at the same conclusion for the reasons which we shall set forth.

The tract of land involved is a plot 200 feet at the south end and 300 feet at the north end, with a depth of 800 feet, containing 5.06 acres. It is bounded on the south and west by land bearing a "Residential District D" classification, on the east by land bearing a "Residential District A" classification and on the north by the Crafton-Ingram borough line. The tract was originally laid out in a plan of residential lots. Since the enactment of the original zoning ordinance nearly 30 years ago it has remained undeveloped, and borough taxes assessed against it have not been paid for some period of time. According to the borough engineer the tract is swampy, and does not lend itself to economic residential development.

The appellant contends that the ordinance is invalid because (1) it was not "conceived and enacted in conformity with the provisions of the enabling statutes" and (2) "it represents spot zoning."

Section 3303 of The General Borough Act as supplemented by the Act of July 10, 1947, P. L. 1621 §93, 53 PS §15211.3, provides concerning zoning ordinances as follows:

"Such regulations shall be made in accordance with a comprehensive plan, and designed to lessen congestion in the streets, to secure safety from fire panic and other dangers, to promote health and the general welfare, to provide adequate light and air, to prevent the overcrowding of land, to avoid undue concentration of population, to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the borough."

In the above section the legislature has listed a number of criteria which a borough council should consider when acting upon a zoning ordinance. If a borough council would ignore *all* of these considerations it would not be complying with the enabling statute. Any ordinance which does not comply with the enabling statute is invalid.

This does not mean that each of the enumerated criteria must be found advantageous to a particular classification before the council has authority to make such classification.

Appellant complains that it "never occurred to council of the Borough of Crafton to change the zoning . . . until the landowner filed his petition asking for the change;" that "council had no idea what sort of enterprise the owner intended to conduct on the land rezoned" (later in his brief he argues that he was unable to sell his business property because of the report that the owner was planning a shopping center on the rezoned tract); that there was no testimony "that the Borough of Crafton had any need for additional commercial land," but there was evidence of "a critical

shortage of residential land in the borough"; that plans to raze buildings and erect new ones in "the original commercial districts" are being interfered with by the threat of a shopping center on the rezoned tract; that the amending ordinance does not adhere to the zoning plan which "fixed boundaries between residential and commercial areas so that business might be established with a reasonable prediction of where competition may be located"; that business facilities should be placed in the geographical center of the borough convenient for all residents of the communities.

For these reasons, on which he elaborates, he contends the ordinance "is not in conformity with the enabling statute."

These complaints are without merit. The ordinance is presumed to be valid. *Whitpain Township v. Bodine*, 372 Pa. 509, 511, 94 A. 2d 737 (1953). Appellant has not met the burden which is upon him to show that the ordinance is not valid.

The legality of an act, resolution or ordinance of any legislative body is not affected by the origin of the idea contained in it.

The lack of vacant land necessary to meet the needs of the community for different types of development is a matter to be considered by council in determining how vacant land should be classified, but it is not the sole criterion, but only one of many.

Although it does not seem relevant here, a council may rezone an area without detailed knowledge of the particular use to be made of it.

In a manner more praiseworthy for its frank approach than for its legal authority, the appellant argues that as an owner of a commercial building in the "original commercial district" he is entitled to protection against competition being established in a new

area. This, as far as we have been able to determine, is a new concept concerning the purpose of zoning, and should be promptly put to rest.

Under some circumstances zoning does limit competition by restricting the area within which it can be established or conducted. This is a by-product of zoning. An ordinance which results in the restriction of competition is not unlawful because of it. But the purpose of zoning is not to limit or restrict competition. It would be unlawful for a council to zone or rezone, or refuse to zone or rezone, for this purpose. Unlike public utility laws, zoning is not for the purpose of limiting or prohibiting competition, and when that is the only purpose of a zoning ordinance it must be declared invalid. The appellant is not entitled to protection against competition by means of a zoning ordinance.

Whether the commercial area of a borough should be placed in the geographic center of the borough or at its borders is a matter for councilmanic consideration. We might note, however, that not many years ago nearly everybody "went shopping" either by walking or by riding public conveyances. The few who went by automobile could find places to park close to the stores. But as the number who went by foot and public conveyance decreased and the number who went by automobiles increased, parking space became so scarce in the central business areas that people preferred to shop where they could park their cars close to the stores without paying parking lot fees. From this desire of the people came the shopping centers. Their development has been unfortunate to many merchants who have invested substantial sums in real estate and merchandizing establishments in the central areas of boroughs and cities, but it is not the duty of government to protect established merchandizing businesses from

fair competition from those whom shoppers find it
more convenient to patronize.

There are two other matters which we must con-
sider.

In the first place the ordinance before us extends
the use which an owner may make of his land, and is
therefore not subject to the same strict interpretation
as one which restricts the use which he can make of it.
As stated by Justice BELL in *Lord Appeal,* 368 Pa.
121, 130, 81 A. 2d 533 (1951), *"The right to acquire
and own property, and to deal with it and use it as
the owner chooses so long as the use harms nobody, is
a natural right.* It does not owe its origin to consti-
tutions. It existed before them. *It is a part of the
citizen's natural liberty,*—an expression of his free-
dom,—guaranteed as inviolate by every American bill
of rights': . . ."

Thus, when a zoning ordinance limits the use to
which Justice BELL was referring it must be clear that
such limitations have a substantial relation to the pub-
lic good, and if it is not clear the ordinance will be
held an unlawful interference with the property rights
of the landowners. *White's Appeal,* 287 Pa. 259, 134
A. 409 (1926). Powers with such serious consequence
as to deprive an owner of important uses of his land
should be exercised only in strict compliance with the
authorizing statutes. *Kline v. Harrisburg,* 362 Pa.
438, 451, 68 A. 2d 182 (1949).

But the appellant is not the owner of the land in
question and has no such rights in it. He had no
vested right which would prevent the borough from
subsequently amending the ordinance of 1926. *Schmidt
v. Philadelphia Zoning Board of Adjustment,* 382 Pa.
521, 114 A. 2d 902 (1955). The action of the borough
in 1926 did not result in a contract with him prevent-
ing the borough from subsequently changing its pro-

visions. *Hollearn v. Silverman,* 338 Pa. 346, 12 A. 2d 292 (1940). Nor does the fact that the amending ordinance may depreciate the market value of plaintiff's property render this ordinance invalid. *Hollearn v. Silverman,* supra.

The amending ordinance which does not take away rights of the owner of land to use it, but returns to him use rights which had previously been taken from him, does not involve "intermeddling with private ownership of property" and is, therefore, not subject to the same strict tests as the original ordinance would have been if tested by the then owner of the tract in question. *Lord Appeal,* supra.

Secondly, we must not forget that: "The power of judicial investigation does not concern itself with the wisdom of the policy emanating from the legislative branch, or whether the best of all possible means of achieving the desired result has been selected. It is concerned only with the questions of whether the statute has a recognized police purpose, and whether it has a reasonable relation to the object to be attained." *White's Appeal,* supra.

As stated by our present Chief Justice STERN in *Gratton v. Conte,* 364 Pa. 578, 584, 73 A. 2d 381 (1950), ". . . zoning classifications are largely within the judgment of the legislative body and the exercise of that judgment will not be interfered with by the courts except in cases where it is obvious that the classification has no substantial relation to public health, safety, morals or general welfare: . . ."

The detail into which courts have frequently gone when discussing the reasons for a particular classification in zoning cases should not mislead anyone into believing that the courts were weighing the pros and cons to determine which way the scales would tip. That is not the function of the court. That is the func-

tion of the legislative body, in this instance the borough council. All the courts need to determine is that there is some basis for the borough's action, or in other words, that the action was not arbitrary and capricious.

Here the borough engineer, whom the lower court believed, said the land was not fit for residential purposes. That alone would have been sufficient basis for the borough's action. The fact that the land, although available for residential building for nearly thirty years, was never developed as such substantiates the engineer's views. The downtown parking problem and the beneficial effect that the rezoning may have upon its solution is another reason favoring the passage of the ordinance. The pros and cons we need not weigh. There clearly was some basis for the borough's action in rezoning the tract.

Was the ordinance unlawful as "spot zoning?" Where a small parcel of land is classified differently from all the surrounding area for no apparent reason or purpose except to favor the owner it is referred to as "spot zoning," and is invalid because it is discriminatory.

The rule denying the validity of spot zoning is generally applied where small areas in residential zones have been taken from such zones and classified as business or commercial zones. *Putney v. Abington Township,* 176 Pa. Superior Ct. 463, 108 A. 2d 134 (1954).

It was held in *Huebner v. Philadelphia Savings Fund Society,* 127 Pa. Superior Ct. 28, 192 A. 139 (1937) that to rezone a single lot with a single house thereon was an unreasonable discrimination and unlawful as spot zoning. See also *DeBlasiis v. Bartell and Oliveto,* 143 Pa. Superior Ct. 485, 18 A. 2d 478 (1940).

But in *Hollearn v. Silverman,* supra, it was held that rezoning a lot with a 100 foot frontage from a residential to a commercial district, where adjoining land was classified as commercial, was not unlawful as spot zoning. *Taylor v. Haverford Township,* 299 Pa. 402, 149 A. 639 (1930).

Although the size of the tract rezoned may not be the only consideration in determining whether the ordinance is invalid as spot zoning, it is certainly a very important consideration. The only cases in Pennsylvania in which zoning ordinances were declared invalid as spot zoning, involved very much smaller areas than the instant tract. The rezoning of an area this large in a borough, under the circumstances of this case, cannot be deemed spot zoning. The tract is 800 feet by 200 feet at one end and 300 feet at the other. This is an area large enough to contain 32 lots with a frontage of 50 feet and a depth from 100 to 150 feet. It is an area large enough to have a score or more storerooms with parking facilities, either as a shopping center or otherwise. It is not the type of "lot" referred to in the spot zoning cases.

Order affirmed.