Fuld, J.
In March of 1960, the Town of Bedford amended its 1946 zoning ordinance to rezone certain property from residence 2-A (two acres) and residence 4-A (four acres) use to an BO (research office) use. The plaintiffs, who live in 2-A and 4-A districts adjacent to or close by the rezoned area, brought the present action to declare the amendment unconstitutional and void and to enjoin the town officials from acting thereunder. The court at Special Term dismissed the complaint and the Appellate Division unanimously affirmed the judgment. The appeal is taken to this court as of right upon constitutional grounds.
The Town of Bedford is situated in northern Westchester County about 38 miles from New York City. Its population has nearly doubled since 1940. About 80 per cent of its land, much of it vacant, is zoned for two-acre or four-acre residential use; three per' cent is devoted to industrial and commercial uses, the remainder to residential uses of less than two acres. *432 The property here involved consists of 123 acres located in Bedford Village, which is in the Katonah section of the town. It has a frontage of about 3,000 feet on Route 22 or Jay Street, the village’s main thoroughfare. Once a single estate, it is now divided into three parcels. One consists of 37 acres of vacant land bordering on Jay Street and belonging to Ruth Alice N. Halsband, the former owner of the entire tract. The second comprises 18 acres owned and operated under a special permit by Hickrill Chemical Research Foundation, an eleemosynary chemical research laboratory founded by Mrs. Halsband and her former husband, now deceased, and headed by her son, Frank Weil. The third contains 68 acres sold by Mrs. Halsband in 1957 to the Harvey School which has been in existence for some 37 years.
Before the town effected the rezoning now challenged, the portion of the property along Jay Street was in a 2-A district and the balance in a 4-A zone. The property surrounding it is for the most part similarly zoned, although there are located nearby the American Legion Club, with swimming pool and picnic tables, the John Jay home, an historical shrine, and, about a mile away, the Westfield State Farm, a prison for women. The subject property is about a half mile from the intersection of Route 22 and the Sawmill River Parkway, about a mile from the Katonah Railway Station and not far from the Cross River Reservoir, a part of the New York City watershed system.
The new RO classification reflects a type of land use which has become widespread since World War II in suburban sections surrounding New York City and other large metropolitan areas. The Town Planning Board of Bedford and its consultants had initiated plans for such zoning in 1956 and the present property figured in those plans. Partly because the ultimate location of Route 22 was then in doubt, however, no action was taken in the matter until 1959, when Frank Weil sought to sell the Hickrill property to Reichhold Chemicals, Inc., for a research and development laboratory.
This, to cull from the testimony of Mr. Weil, “ triggered a refreshed interest in the whole idea of RO zoning ”. New studies and reports were made and hearings held and in October, 1959 the Town Board amended the 1946 zoning ordinance to establish *433 an BO district, and the Planning Board recommended three areas, one of them being the subject property. Considerable opposition developed — part of it based on the incomplete status of a Town Development Plan which had been in progress for some years. However, the Town Board did no more than postpone decision on the matter in order to revise and make more strict the provisions relating to access and area requirements. Finally, on March 8, 1960, after a public hearing, the Town Board unanimously adopted a resolution rezoning the subject property for BO purposes, and 23 days later further limitations in connection with BO uses were approved; the Bedford BO classification became the most restricted in the entire county.
The minimum size for an BO development was 25 acres, the building area being limited to 10 per cent of the lot and the total floor area to 15 per cent. The maximum height was three stories. Setback regulations, including those for parking space, were strict, and parking areas were required to be screened from neighboring properties. Developments employing more than 50 people were compelled to provide direct access to a state or county highway. No uses were permitted which would result in the dissemination of dust or smoke, in vibration, excessive light, noise or traffic congestion. The Town Board was required to approve all proposed plans and could condition its approval upon adequate screening and shading to reduce the ‘ ‘ emission of artificial light ’ ’ at night. In short, many of the restrictions upon BO uses were more rigorous than those for 4-A districts.
In any area of even moderate density, comprehensive and balanced zoning is essential to the health, safety and welfare of the community (Town Law, § 261; Village Law, § 175). The task of achieving this goal devolves upon the local legislative body, and its 11 judgment must be allowed to control” if the classification is “fairly debatable ”. (Rodgers v. Village of Tarrytown, 302 N. Y. 115, 121, quoting from Euclid v. Ambler Co., 272 U. S. 365, 388; see, also, Shepard v. Village of Skaneateles, 300 N. Y. 115, 118; Town of Islip v. Summers Coal & Lbr. Co., 257 N. Y. 167, 169, 170.) In other words, the courts may not interfere unless the local body’s determination is arbitrary, and ‘ ‘ the burden of .establishing such arbitrariness *434 is imposed upon him who asserts it.” (Rodgers v. Village of Tarrytown, 302 N. Y. 115, 121, supra.)
These principles apply with equal force to rezoning, where there is presented the additional problem of adjusting a durable and uniform zoning pattern to altered conditions, whether local or county. As we wrote in the Rodgers case (302 N. Y. 115, 121), “While stability and regularity are undoubtedly essential to the operation of zoning plans, zoning is by no means static. Changed or changing conditions call for changed plans, and persons who own property in a particular zone or use district enjoy no eternally vested right to that classification if the public interest demands otherwise. Accordingly, the power of a village to amend its basic zoning ordinance in such a way as reasonably to promote the general welfare cannot be questioned.”
In the present ease, the plaintiffs take the position that the town enacted a comprehensive zoning ordinance in 1946 which fully met, and still meets, the needs of the community and that it may not be amended without a showing of need, based on financial considerations or arising from changed conditions. At the same time, they declare that they have no general objection to an BO classification as such, but only to the fact that it has been placed in the portion of the town selected. What the plaintiffs are attempting to do, it seems clear, is to reverse the presumption that the ordinance is valid and place upon the town officials the burden of proving that they acted reasonably. The town, of course, is not required to establish a need, for rezoning; the burden of proving arbitrariness rests upon the plaintiffs.
The zoning under attack was reasonable and in accordance with a comprehensive plan. It was adopted after careful study and consultation with experts and after extensive hearings at which interested persons were given an opportunity to be heard; even the plaintiffs’ own expert did not assert that the new zoning failed to follow a comprehensive plan. Furthermore, changing conditions completely justified the change which was effected. With the enormous and continuing population growth and the expansion of business into suburban communities in the metropolitan area, the town planners necessarily realized that increasing urbanization of .the town was inevitable. Observ *435 ing the trend in the suburbs toward the development of campus-type laboratory and research projects, they very properly decided that this type of zoning might preserve a fair measure of peace and serenity in their locality in the face of growing demands for business and commercial use of vacant land.
To state the matter briefly, by insisting upon a minimum of 25 acres for a research development and a building area limited to 10 per cent of the land, with provision for setback and screening requirements far more stringent than those for 2-A and 4-A districts, the town has effected a balance between the pressure of changing conditions and the preservation of the rural atmosphere so much desired by residents of the area.
The plaintiffs’ charge of “ spot zoning ” has been adequately dealt with in Justice Hopkins’ careful and thorough opinion at Special Term, and little need be added to what he wrote. Such spot zoning, we have said, is the “ process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners ”. (Rodgers v. Village of Tarrytown, 302 N. Y. 115, 123, supra.) Whether the size of the “parcel” here involved, comprising an area of 123 acres, is sufficient, without more, to exonerate the town officials from the charge leveled against them, we need not say. Since the Town Board acted in accordance with a comprehensive plan, even the singling out of one lot or the creation of a small area in the center of a large zone devoted to a different use will not be condemned as spot zoning. (See, e.g., Shepard v. Village of Skaneateles, 300 N. Y. 115, supra; Nappi v. La Guardia, 295 N. Y. 652.) The vice of spot zoning is its inevitable effect of granting to a single owner a discriminatory benefit at the expense and to the detriment of his neighbors, without any public advantage or justification. That is not the situation here. As we have already noted, the introduction of BO zoning was contemplated as part of a comprehensive plan, albeit an alteration of the original 1946 plan, to preserve the quiet and spaciousness of a community increasingly subject to pressure from a rapidly growing population and from business expansion in the metropolitan area.
The judgment should be affirmed, with costs.
*436 Chief Judge Desmond and Judges Dye, Feoessel, Van Voorhis, Burke and Foster concur.
Judgment affirmed.