## Mulac Appeal.

Argued March 18, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert Palkovitz*, with him *David S. Palkovitz, Jack Palkovitz*, and *Palkovitz & Palkovitz*, for appellant.

*Dayne Shaw*, for appellee.

*A. J. Rosenbleet*, City Solicitor, for City of McKeesport, appellee.

OPINION BY MR. JUSTICE O'BRIEN, May 25, 1965:

The case at bar involves the rezoning of a parcel of land in the City of McKeesport from " 'E' Residential" to "General Business". The land in question was, for a long period, owned by the School District of the City of McKeesport, which maintained a school building thereon. The property consists of one city block, bounded by Soles, Oak, Bridge and Evans Streets, in

the seventh ward of the City, and measures 210 ft. x 215 ft., being 45,150 sq. ft., or 1.04 acres.

The McKeesport Zoning Ordinance, enacted in 1953, designated the property in question, and the surrounding property, as " 'E' Residential". Subsequent to the enactment of the 1953 Ordinance, the school use of the property was discontinued and the School District conveyed the property to Baehr Brothers. Thereafter, the city council enacted an ordinance amending the 1953 ordinance by changing the zoning classification of the property to "General Business". In due course, Baehr Brothers applied for, and was granted, a building permit for the erection of a grocery supermarket on the rezoned premises.

Residents and property owners in the vicinity appealed to the board of adjustment, which sustained the grant of the building permit. An appeal followed to the County Court of Allegheny County, which remanded the matter to the board for further hearing. New hearings were held by the board, it again sustained the grant of the permit and an appeal was taken to the county court. The court, without taking additional testimony, sustained the board and dismissed the appeal; we allowed an appeal in accordance with the provisions of Rule 68½ of this Court.

Appellant contends that the amendatory ordinance is invalid because not accomplished in accordance with a comprehensive plan and does not promote the public health, safety, morals and general welfare. Appellant further argues that the amendatory ordinance constitutes spot zoning and is, therefore, illegal. Appellees urge that the rezoning was within the scope of the city's comprehensive plan; that there was no spot zoning, inasmuch as the general area is mixed in nature, consisting of residential and commercial properties; and that the board neither abused its discretion nor committed an error of law.

We conclude that the rezoning of the land in question constituted illegal spot zoning. *Putney v. Abington Twp.,* 176 Pa. Superior Ct. 463, 108 A. 2d 134 (1954), defined spot zoning as " 'A singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment is invalid "spot" zoning' ". This definition was specifically approved by us in several recent cases. *Cleaver v. Board of Adjustment,* 414 Pa. 367, 200 A. 2d 408 (1964); *Upper Darby Township Appeal,* 413 Pa. 583, 198 A. 2d 538 (1964); *Glorioso Appeal,* 413 Pa. 194, 196 A. 2d 668 (1964).

While there is not, and cannot be, a formula which can be applied with mathematical certainty to determine whether a particular situation constitutes spot zoning, guide lines are available for application to individual fact situations. In *French v. Zoning Bd. of Adjust.,* 408 Pa. 479, 184 A. 2d 791 (1962), we held that the commercial zoning of six parcels of land, then devoted to commercial uses, in the midst of a residentially zoned area, was spot zoning. In *Cleaver,* supra, we approved the rezoning of some 11 acres of land, and in *Upper Darby Township Appeal,* supra, we approved the rezoning of a parcel less than 1 acre in size. In *Glorioso,* supra, we reversed the "special" zoning of a 4½ acre tract. Clearly, the size of the property involved is only one of the determining factors. What is most determinative is whether the parcel in question is being singled out for treatment unjustifiably differing from that of similar surrounding land, thereby creating an "island" having no relevant differences from its neighbors.

In neither *Cleaver* nor *Upper Darby* were such islands created, while in *Glorioso* and *French* they were. In *Glorioso,* we held that "the only distinction between

the zoning in the instant case and in French is that the spot zoning in French tended to increase the value of the area given exceptional treatment whereas here the special treatment tended to diminish value". The case at bar fits into the situation in *French*, the value of the rezoned property being greatly enhanced by the amendatory ordinance.

Appellees' argument that the rezoning was proper because the parcel is situated in an area of mixed commercial and residential uses is not persuasive. The area in which the subject premises is located is *zoned* residential. It is true that, within the confines of this large residential zone, certain commercial uses exist. All such commercial establishments exist, however, as nonconforming uses and, should such uses cease, the properties could be utilized only for residential purposes. *French v. Zoning Bd. of Adjust.*, supra. The amendatory ordinance creates a commercially zoned island in a residentially zoned sea and, unless a proper basis appears for such special treatment, cannot be sustained.

The facts fail to disclose any sound basis for such special treatment. The record discloses that the property could be used, albeit not as profitably, for residential purposes. The record does not support the conclusion reached by the court below that new residential development in the neighborhood is not economically feasible, the owner himself having testified that the land could be so developed.

Since the court below took no additional testimony, our function is to determine whether the board of adjustment clearly abused its discretion or committed an error of law. *Cleaver v. Board of Adjustment*, supra; *Jasy Corp. v. Board of Adjustment*, 413 Pa. 563, 198 A. 2d 854 (1964). We conclude that an error of law was committed in that the board failed to find the amendatory ordinance to be illegal spot zoning. So

holding, we neither discuss nor decide the questions raised concerning comprehensive plan and the promotion of the public health, safety, morals and general welfare.

Order reversed.

———

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result reached by the majority but do so only after considering, as the majority fails to do, "the questions raised concerning comprehensive plan and the promotion of the public health, safety, morals and general welfare." In my view, a finding of illegal "spot zoning" must necessarily involve consideration of those matters.

Confusion arises in this area of zoning law because of the dichotomy of meaning attributed to the term "spot zoning". In some instances, "spot zoning" is used in a descriptive sense connoting the geographical isolation of a small parcel of land which is zoned either more or less restrictively than the property which surrounds it. When used in that sense, "spot zoning" is not necessarily invalid. 8 McQuillin, Municipal Corporations §25.84 (3d ed. rev. Supp. 1963); Annot., Spot Zoning §2, 51 A.L.R. 2d 263,266 (1957). On the other hand, the term "spot zoning" is also used to indicate the legal conclusion that such zoning, under the circumstances of a particular case, is invalid.

In our cases "spot zoning" has been employed as a legal term indicating invalidity rather than as a mere descriptive term characterizing the rezoned area. See, e.g., *French v. Zoning Bd. of Adjustment*, 408 Pa. 479, 184 A. 2d 791 (1962); *Schmidt v. Phila. Zoning Bd. of Adjustment*, 382 Pa. 521, 114 A. 2d 902 (1955); *Gratton v. Conte*, 364 Pa. 578, 73 A. 2d 381 (1950); *Boyle Appeal*, 179 Pa. Superior Ct. 318, 116 A. 2d 860 (1955); *Putney v. Abington Township*, 176 Pa. Superior Ct. 463, 108 A. 2d 134 (1954).

The general rule is that "if a change of zone is reasonable and is in accordance with the comprehensive plan of the zoning ordinance and can be justified as contributing to the public health, safety and general welfare, it will not be held invalid as 'spot zoning,' even though the reclassification affects only a single piece of property or may incidentally discriminate in favor of the owner thereof." (Footnotes omitted.) 1 Rathkopf, The Law of Zoning and Planning 26-14 (1962). See *Clark v. City of Boulder,* 146 Colo. 526, 362 P. 2d 160 (1961); *Luery v. Zoning Bd. of City of Stamford,* 150 Conn. 136, 187 A. 2d 247 (1962); *England v. Mayor and Council of Rockville,* 230 Md. 43, 185 A. 2d 378 (1962); *Weber v. City of Grand Island,* 165 Neb. 827, 87 N.W. 2d 575 (1958); *Borough of Cresskill v. Borough of Dumont,* 15 N.J. 238, 104 A. 2d 441 (1954); *Thomas v. Town of Bedford,* 11 N.Y. 2d 428, 184 N.E. 2d 285, 230 N.Y.S. 2d 684 (1962). "Thus, the validity or invalidity of 'spot' or 'island' zoning [used descriptively] depends upon more than the size of the 'spot' or the fact that it is surrounded by uses of another character than those for which the 'spot' is zoned." 8 McQuillin, Municipal Corporations §25.84 (3d ed. rev. 1957).

In *Boyle Appeal,* 179 Pa. Superior Ct. 318, 327, 116 A. 2d 860, 866 (1955), it was held that "where a small parcel of land is classified differently from all the surrounding area *for no apparent reason or purpose except to favor the owner,* it is referred to as 'spot zoning' and is invalid because it is discriminatory." (Emphasis supplied.) See *Schmidt v. Phila. Zoning Bd. of Adjustment,* 382 Pa. 521, 114 A. 2d 902 (1955); *Gratton v. Conte,* 364 Pa. 578, 73 A. 2d 381 (1950).

Indeed, the majority reaffirms this point when it states that "the amendatory ordinance creates a commercially zoned island in a residentially zoned sea and, *unless a proper basis appears for such special treat-*

*ment,* cannot be sustained." (Emphasis supplied.) However, by stating that it is unnecessary to discuss or decide the question of comprehensive plan and the promotion of the public health, safety, morals and general welfare, the majority ignores evidence of the very "proper basis" which it has said would justify special treatment. The majority opinion implies, therefore, that such "proper basis" can only be found in some distinguishing physical characteristic which sets the land apart from the surrounding area. Our consideration of a zoning ordinance should not be so confined, however, for the reason that zoning involves many complex factors, the mere "lay of the land" being only one of them.

It is incumbent upon us to consider the purported justification for the rezoning and determine if it does adhere to a comprehensive plan and if it does promote the public health, safety, morals and general welfare. In the instant case, I can find no merit in the arguments advanced in that regard by appellee and, for that reason, I agree that the zoning change here attempted constituted invalid "spot zoning".

Mr. Justice JONES joins in this concurring opinion.