In re Appeal of REALEN VALLEY FORGE GREENES ASSOCIATES from the Decision of the Zoning Hearing Board of Upper Merion Township Dated August 13, 1999.

Appeal of Realen Valley Forge Greenes Associates.

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 2001.

Decided June 4, 2002.

Marc B. Kaplin, Blue Bell, for appellant.

Alan E. Boroff, Blue Bell, for appellees.

BEFORE: DOYLE, Senior Judge,[1] LEADBETTER, Judge, FLAHERTY, Senior Judge.

OPINION BY Senior Judge DOYLE.

Realen Valley Forge Greenes Associates (Realen) appeals from an order of the Court of Common Pleas of Montgomery County that affirmed a decision of the Zoning Hearing Board of Upper Merion Township (Board) denying Realen's challenge to the validity of the Township's zoning ordinance under Sections 909.1 and 916.1(a) of the Pennsylvania Municipalities Planning Code (MPC),[2] 53 P.S. §§ 10909.1, 10916.1(a). After careful review of the record, we affirm.

Realen is the equitable owner of a parcel of land (Property), approximately 135 acres in size, legally owned by Hankin Family Partnership. The Property is situated in Upper Merion Township, upon which a privately-owned golf club has been located since the 1920s. The Property is part of the Township's Agricultural Zoning District (AG district), and has been so

---

1. This case was assigned to the opinion writer prior to the date when President Judge Doyle assumed the status of senior judge on January 1, 2002.

2. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202. Sections 909.1 and 916.1 were added by the Act of December 21, 1988, P.L. 1329.

designated since 1953, when the AG district was created.

The original AG district was approximately 3100 acres and included the Property and surrounding parcels of land. Since 1953, however, most of the surrounding parcels have been rezoned as Commercial, Administrative and Research, Suburban Metropolitan, or other uses. The Property is the fifth largest parcel of land in the Township and is considerably larger than the immediately surrounding parcels: the next largest is merely thirteen acres in size. The Property is also bounded by roads on every side and its physical characteristics have remained unchanged since 1953.

The current section of the Upper Merion Township Zoning Ordinance pertaining to the uses permitted in the AG district, Section 165–10, permits four uses by right, eleven additional uses by special exception, and permits two other uses by conditional use. The four uses permitted by right are single-family detached dwellings, conversion of single-family detached dwellings, agriculture, and municipal use. The eleven uses permitted by special exception are (a) educational, religious, philanthropic use, excluding correctional or penal institution; (b) day camp; (c) hospital, convalescent home, sanatorium; (d) club, fraternity house or lodge; (e) passenger station for public transportation, telephone central office, other public utility use; (f) radio and television transmitting station and towers; (g) laboratory for scientific, agricultural or industrial research; (h) community center, noncommercial park, athletic field, recreational use; (i) golf course, excluding golf driving range and miniature golf course; (j) riding academy; (k) cemetery. The uses permitted by conditional use are Cluster residential development and Personal care facility.

On November 13, 1997, pursuant to Sections 909.1 and 916.1 of the MPC, Realen submitted to the Board a challenge to the constitutional validity of the ordinance, contending that the AG zoning of the Property constitutes unlawful spot zoning, is arbitrary and irrational, and constitutes unlawful special legislation. The Upper Merion Township Board of Supervisors (Supervisors) entered the action as a party in opposition to Realen's challenge, and the Board held fourteen public hearings on the matter. On August 13, 1999, the Board issued an order and fifty-one page opinion, in which it made extensive findings of fact and conclusions of law, and denied Realen's challenge, concluding that the ordinance provides for various reasonable and legitimate uses of the Property, that the zoning of the Property reflects consideration of public health, safety, and morals, and therefore the zoning classification was not arbitrary or irrational and did not constitute spot zoning or special legislation. Realen appealed the Board's decision to the Court of Common Pleas of Montgomery County. On December 1, 2000, Common Pleas affirmed the decision of the Board and Realen subsequently filed the present appeal before this Court.

■ On appeal, Realen presents five issues for our consideration: 1) whether Common Pleas erred in failing to determine that the AG zoning of the property unreasonably restricts its use; 2) whether Common Pleas erred in failing to determine that the AG zoning of the Property was spot zoning; 3) whether Common Pleas erred in failing to determine that the AG zoning of the Property was special legislation; 4) whether Common Pleas erred in failing to determine that the Board's decision was not supported by substantial evidence; and 5) whether Common Pleas erred in failing to determine that the motivation of the Township was

relevant when considering the validity of the zoning of the Property.[3]

 We begin our analysis by noting that a zoning ordinance is presumed valid, and one challenging the constitutionality of an ordinance bears a heavy burden to overcome that presumption; furthermore, the challenging party must clearly establish that the ordinance provisions are arbitrary and unreasonable and have no relation to the public health, safety, morals, and general welfare. *Schubach v. Silver,* 461 Pa. 366, 336 A.2d 328 (1975); *In re Apgar,* 661 A.2d 445 (Pa.Cmwlth.1995). If the constitutionality of an ordinance is debatable, the legislative judgment of the governing body must control. *Schubach; Kirk v. Zoning Hearing Board,* 713 A.2d 1226 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* 558 Pa. 624, 737 A.2d 745 (1999). In the present case, Realen has failed to meet its burden.

First, Realen argues that the current zoning of the Property is unconstitutional because it unreasonably restricts the use of the Property to its present use as a golf course. Specifically, Realen contends that the Board lacked substantial evidence to support a finding that the property could be used as anything other than a golf course and that the Board erred in determining that any proposed use does not necessarily need to comply with the Township Comprehensive Plan. We disagree.

 It is well settled that, in zoning cases, the Board is the finder of fact with exclusive province over matters of credibility and weight to be afforded the evidence. *In re Brickstone Realty Corp.,* 789 A.2d 333 (Pa.Cmwlth.2001). As such, the Board may reject even uncontradicted testimony if the Board finds it to be lacking credibility. *Vanguard Cellular System, Inc. v. Zoning Hearing Board,* 130 Pa.Cmwlth. 371, 568 A.2d 703 (1989), *petition for allowance of appeal denied,* 527 Pa. 620, 590 A.2d 760 (1990). Here, the Board made 140 findings of fact and cited specific evidence in support of each material finding. Realen, however, relying extensively on testimony not relied on by the Board, claims that no reasonable fact finder could have found as the Board did because Realen's witnesses were of such a high caliber and the Supervisors' own expert land-planning witness, John Rahenkamp, on cross-examination, contradicted his direct testimony regarding viable uses of the property. These claims lack merit.

 The "caliber" of a witness goes directly to credibility and the weight a fact finder will place on that witness' testimony. As we have stated, credibility and weight of evidence are properly determined by the Board, not this Court. Therefore, we will not question the findings of the Board in this regard. Regarding Realen's contention that the Supervisors' land-planning expert's testimony was incompetent because he allegedly contradicted himself on cross-examination, we are unpersuaded.

In support of its contention, Realen cites the following testimony of Mr. Rahenkamp, elicited on cross-examination:

Q. Okay. So I would hope then that you would agree that none of the uses that are permitted by right in the Agricultural District could viably be developed or are appropriate on the golf course property?

---

**3.** In a zoning case, where Common Pleas has taken no additional evidence, our standard of review is limited to determining whether the zoning hearing board abused its discretion, committed an error of law, or made findings of fact not supported by substantial evidence. *Puleo v. Zoning Hearing Board,* 722 A.2d 789 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 559 Pa. 671, 739 A.2d 168 (1999).

A. Yes. As a matter of right, uses are very limited or not practical uses. It's a fairly unique site, therefore, the special exception and conditional uses were more appropriate, yes.

(Notes of Testimony, N.T., Testimony of John Rahenkamp at 781–82). A review of the record, however, indicates that Rahenkamp expressed a similar opinion on direct examination. On direct examination, Rahenkamp testified as follows:

Q. In your opinion, is the single-family detached dwelling use[, a use allowed as of right,] a viable use for this property? A. Marginally so. It's obviously not an ideal site for large lot single-family homes. Could it be used for that, yes. But its [sic] not an ideal use.

(N.T., Rahenkamp Testimony at 682). Rahenkamp indicates that, although not an ideal use, the Property may be used for single-family detached dwellings, and he adds, on cross-examination, that the Property is better suited for the special exception and conditional uses. We fail to see any contradiction or any other reason to question the competence of Rahenkamp's testimony. As such, the Board properly relied on Rahenkamp's testimony as substantial evidence to support its findings regarding potential uses of the property.

 Realen continues, however, by suggesting that, although the property could viably be developed under four special exception uses and both conditional uses, the property is still unreasonably restricted because the procedure for procuring permission for a special exception or conditional use requires compliance with the comprehensive plan, and the comprehensive plan, which designates the property as "Parks, Recreation, and Open Space," (Upper Merion Township Comprehensive Plan–1986, Ch. VII at 28), contradicts the special exception and conditional uses. In making its argument, Realen ac-

knowledges that there is a long line of cases instructing that a comprehensive plan simply recommends desirable approaches to land utilization and that it is the zoning ordinance, being regulatory in nature, which controls the actual uses that can be made of the property. *See County of Adams v. Department of Environmental Protection*, 687 A.2d 1222 (Pa.Cmwlth. 1997); *Schatz v. New Britain Township Zoning Hearing Board of Adjustment*, 141 Pa.Cmwlth. 525, 596 A.2d 294 (1991); *Appeal of Molnar*, 64 Pa.Cmwlth. 578, 441 A.2d 487 (1982); *Michaels Development Co. v. Benzinger Township Board of Supervisors*, 50 Pa.Cmwlth. 281, 413 A.2d 743 (1980); *Nicholas Heim & Kissinger v. Harris Township*, 31 Pa.Cmwlth. 357, 375 A.2d 1383 (1977); *Appeal of FPA Corp.*, 25 Pa.Cmwlth. 221, 360 A.2d 851 (1976); *Forks Township Board of Supervisors v. George Calantoni & Sons, Inc.*, 6 Pa. Cmwlth. 521, 297 A.2d 164 (1972). Nevertheless, Realen, relying on this Court's decision in *Levin v. Board of Supervisors*, 669 A.2d 1063 (Pa.Cmwlth.1995), contends that, when a zoning ordinance specifically requires that a prospective special exception or conditional use comply with a comprehensive plan, the desirable land uses enumerated in the comprehensive plan become regulatory and control the use of the land. Again, we must disagree.

In *Levin*, we determined that if an ordinance sets out criteria that "shall be" used in making the evaluation of a proposed conditional use, then those criteria are not merely a guide but are specific requirements that must be addressed before a conditional use is permitted. *Levin*, however, did not address the specific issue presented here, where one section of an ordinance lists specific land uses allowed by special exception or conditional use, and another section of the ordinance requires, for the grant of a special exception or

conditional use, compliance with seemingly contradictory general guidelines in a comprehensive plan.[4]

As we have stated, when there is a conflict between the uses enumerated in an ordinance and a utilization recommendation contained in the comprehensive plan, the uses listed in the ordinance will prevail because the ordinance is regulatory in nature. In spite of this, Realen seems to suggest that the recommendations made in the comprehensive plan become regulatory because, when compliance with a comprehensive plan is required, the uses listed in the comprehensive plan are incorporated into the ordinance by reference. This argument, however, ignores the nature of the comprehensive plan; regardless of whether the ordinance in question requires compliance with the comprehensive plan, the comprehensive plan itself is still simply a general guide that recommends land utilization.[5] Furthermore, the rules of statutory construction instruct that specific provisions of an ordinance will prevail over general provisions. *See* 1 Pa C.S. § 1933; *Heck v. Zoning Hearing Board*, 39 Pa. Cmwlth. 570, 397 A.2d 15 (1979). Thus, the uses specifically listed in Section 165–10 of the ordinance prevail over any general recommendation made through the comprehensive plan, even if it is somehow incorporated into the ordinance.

The Board relied on substantial evidence and committed no error of law in finding that the Property can be developed for uses as of right, special exception, and

conditional use, and therefore Realen is not unreasonably restricted in its use of the Property.

Next, Realen contends that the AG zoning of the Property represents arbitrary and discriminatory spot zoning. Specifically, Realen argues that, because the Property is surrounded by properties that are zoned differently, it has become a veritable island of singular zoning, lacking distinguishable characteristics that would justify different treatment from that afforded the surrounding properties. We disagree.

"Spot zoning" has been defined by our Supreme Court as

[a] singling out of one lot or a small area for different treatment from that accorded to similar surrounding land **indistinguishable from it in character,** for the economic benefit of the owner of that lot or to his economic detriment.

*In re Mulac,* 418 Pa. 207, 210, 210 A.2d 275, 277 (1965) (emphasis added). Thus, for there to be discriminatory spot zoning, a property that is treated differently from surrounding land must be "indistinguishable" in character. Here, however, the Board found that the Property is unique and distinguishable in several respects from the surrounding properties. (Board's Op., Findings of Fact Nos. 40–42, at 7, 8). Two notable differences found by the Board were that the Property is considerably larger than the surrounding proper-

---

4. Furthermore, in *Levin* there was no conflict between the general policy requirements stated in the township's comprehensive plan and the property owner's use of the subject property; in fact, the specific use in *Levin* was also in complete harmony with the conditional use and special exception uses permitted on the property. Unlike *Levin,* however, Realen's proposed use of the Property in this case conflicts with the comprehensive plan and is

clearly not permitted by conditional use or special exception.

5. We decline to determine if the ordinance at issue in the present case actually requires compliance with the comprehensive plan or whether a conflict exists between the allowed uses and utilization recommendations in the comprehensive plan. Such an analysis is not necessary based on our reasoning above.

ties and the Property is completely surrounded by roadways. (Findings of Fact Nos. 61–62).[6]

Realen acknowledges that the Property is larger than the surrounding properties but suggests that all of the other factors the Board used to distinguish the Property are insufficient, and that distinguishing a property based solely on its size is not allowed under Pennsylvania law. In support of its argument, Realen relies on the following language from our Supreme Court's decision in *Mulac*, 418 Pa. at 210, 210 A.2d at 277:

> Clearly, the size of the property involved is only one of the determining factors. What is most determinative is whether the parcel in question is being singled out for treatment unjustifiably differing from that of similar surrounding land, thereby creating an "island" having no relevant differences from its neighbors.

In *Mulac*, however, the Supreme Court was referring to the previously held notion that only small properties could be the subject of spot zoning.[7] Here, however, the Board did not suggest that the property could not be the subject of spot zoning because of its large size; the Board considered the size of the property relative to the size of the surrounding properties in order to establish whether size was a distinguishing characteristic; it found that it was. The Board's reliance on the size of the property to show that it is unique or distinguishable is justified. Moreover, Realen's argument fails because the size of

the property was not the sole distinguishing characteristic.

Attacking the Board's finding with regard to the Property's distinguishing characteristic of being surrounded by roadways, Realen mischaracterizes the finding and states, "[t]he Board also attempts to rely upon the *proximity* of the Property to roads to justify the ... different treatment...." (Realen's Br. at 32) (emphasis added). The Board, however, did not rely on the Property's "proximity" to roadways; instead, the Board found that "[t]he subject property is completely surrounded by roadways. None of the surrounding properties are surrounded by roadways as the subject property is." (Board Op., Finding of Fact No. 42, at 8). Realen does not suggest that the surrounding properties are surrounded by roads as is the Property; Realen simply indicates that the surrounding properties have "access" to the same roads or are located on one of the surrounding roads. Thus, Realen has failed to show that the fact that the Property is completely surrounded by roads is not a justifiable distinguishing aspect.

The Board found that the AG zoning of the Property is proper and that the Property is distinguishable from surrounding properties such that it has not been the subject of illegal spot zoning. Substantial evidence supports the Board's findings in this regard and, therefore, we shall not disturb them.

---

**6.** The Board also noted that the Property was a neighborhood unto itself, and the natural features of the property, which have not changed since the creation of the AG district in 1953, are unique compared to the surrounding properties. (Findings of Fact Nos. 43–54).

**7.** The belief that only small properties could be the subject of spot zoning was rejected by our Supreme Court in *Commercial Properties,*

*Inc. v. Peternel*, 418 Pa. 304, 311, 211 A.2d 514, 519 (1965), in which the Court stated, "[i]t makes no difference whether it is a 1/4 acre lot or a 50 acre industrial complex area which is the subject of the rezoning. If it is aimed at preventing a theretofore legal use of an integrated unit owned by one common interest, the action cannot be supported as valid rezoning."

Realen's final contention is that, in evaluating its special legislation claim, the intention of the Supervisors should have been considered with regard to the validity of the AG zoning of the Property. We have held, however, that "the state of mind of the legislative body in enacting a zoning ordinance is irrelevant to a determination of its validity. Rather, the legislation must stand or fall on its own terms...." *Apgar*, 661 A.2d at 448 (citing *Klein v. Council of the City of Pittsburgh*, 164 Pa. Cmwlth. 521, 643 A.2d 1107 (1994); *Nichols v. City of Corry*, 53 Pa.Cmwlth. 248, 417 A.2d 836 (1980)). Therefore, the Board and Common Pleas properly refused to consider the intent of the Supervisors.

Based on the foregoing analysis, we hold that Realen has failed to establish that the ordinance in question is either arbitrary and unreasonable or that it lacks a relationship to the Township's public health, safety, morals, and general welfare; succinctly, Realen has failed to meet its burden and the ordinance was properly found to be constitutionally valid.

Accordingly, the order of the Court of Common Pleas of Montgomery County is affirmed.

### ORDER

**NOW,** June 4, 2002, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby affirmed.