### Wilson v. Waltz

*Ronald M. Agulnick*, for plaintiffs.
*David C. Patten*, for defendant.

KURTZ, JR., P. J., October 13, 1972.—This is an action by which plaintiffs, whose property abuts that of defendant, seek to restrain defendant's maintenance of two silos and a 10-foot portion of the barn with which those silos are used upon his property in violation of the "side yard" requirements of the West Goshen Township Zoning Ordinance. The late President Judge Gawthrop sat as chancellor in the matter and heard the testimony presented. We now file this adjudication from the notes of testimony taken at the hearing which he conducted.

The structures in question are located within an R-3 residential district in the township. The pertinent provisions of the ordinance require that farm buildings be constructed not closer than 100 feet from a side or rear property boundary line, and that no barn is permitted to be built closer than 100 feet from any property line provided that silos and bulk bins are exempt from such requirement if attached to an existing building.

The following narrative from the opinion of the late President Judge in the case of Waltz v. Zoning Board of Adjustment, 15 Chester Co. Rep. 285 (1967), in which the action of the zoning board of adjustment in its refusal to issue a building permit was affirmed,

will set the background against which this case is being tried. Beginning at page 286 of that opinion it was said:

"Before commencement of the construction in question, appellant's farm, the southerly 140 acres of which is in West Goshen, was improved with certain older farm buildings and a dwelling house. About 1963 appellant began planning construction of a milk processing plant to include a barn, pump room, electric room and miling parlor to conduct dairy farming and the processing and sale of milk, the retail sale of milk to be conducted as permitted on the West Whiteland part of the property. Before the end of July, 1965, he consulted the West Goshen Township Zoning Ordinance then in effect, conferred with the Chairman of the Board of Supervisors of the Township and learned that no permit was then required for the construction of his proposed plant, including a barn and two silos, partially on the West Goshen part of the property, and that such buildings were required to set back only 15 feet from the property boundary line. While then and later he could have placed the buildings elsewhere on his property, he chose to erect them at a point where the southerly end of the barn would be 90 feet north of the south property line and the silos would be 45 feet north of the same boundary, in order to avoid interferring [sic] with two little league baseball diamonds situate on a level area farther north on his property and used by young boys.

"About the end of July, 1965, appellant and another man staked out the location of the barn and began digging excavations for barn foundations. This work consumed three days and involved $500.00 in expense. The staking and excavations placed the barn mostly in West Whiteland Township but with its

southerly end in West Goshen. No further work was done until late March, 1966, when appellant began construction of the barn, although before that he had purchased a herd of cows, a conveyor to carry ensilage, and various other personal property for the proposed operation. On two occasions after adoption of the August, 1965, Zoning Ordinance and before March 1966, appellant asked Mr. Worthington, Chairman of the West Goshen Township Board of Supervisors, whether he needed a building permit to proceed with his construction. The Chairman told him he was not certain of the answer; that appellant should procure a copy of the new 1965 Ordinance and 'be sure what you are doing.' He also told appellant to consult Mr. Hallowell, the Township Zoning Officer, and Mr. Muth, its Building Inspector, about the matter. Appellant never obtained or examined a copy of the 1965 Ordinance, although he once undertook to reach the Zoning Officer by telephone and once by a visit to the Township building but failed to reach the Zoning Officer on either occasion.

"About April 1, 1966, at the time construction of the barn began, the Zoning Officer and the Building Inspector visited the premises and asked appellant if he had a permit for the construction. Appellant said he did not and understood he did not need one. The Zoning Officer and Building Inspector both agreed that no permit was necessary for the erection of agricultural buildings, examined the location of the barn and verbally approved it. Appellant then proceeded with construction under the misapprehension that the Zoning Ordinance had not been changed in its former requirement of only a 15 foot wide setback of farm buildings from a property boundary and that no permit was required to erect farm buildings. He built part of the barn, one silo and part of another on

the West Goshen part of the property at the respective distances from the property boundary above set forth, as well as a pump house and milking parlor not here involved. The now completed larger silo had been built to a height of 45 feet and the shell of the barn was completed by about May 15, 1966. Appellant learned that evening that two unidentified men had come to the property in his absence to inquire into the construction. He decided to, and the following day did, telephone the Chairman of the Board of Supervisors about the matter. The Chairman met him on the premises the same day. They discussed Messrs. Hallowell and Muth's visit to the property on April 1, 1966, and their statement to appellant that he did not need a permit and that everything looked all right, after which the Chairman told appellant that if he did not hear from the Chairman by 7:00 o'clock the following morning he could proceed with construction. Appellant heard nothing further from the Chairman or from anyone else about the matter until the Cease and Desist Order was served on him June 1, 1966, at which time the barn was substantially built, the larger silo 65 feet high had been completed, and the footings had been poured and one section of steel was built on the second and smaller silo. At that time neither silo was connected to the barn by any construction nor was any such connection intended.

"Appellant's expenditure up to that time in construction of the barn amounted to about $14,000, in purchase and construction of the larger silo it was about $25,000, and of the smaller silo about $6,000, the well, pump and pump house had been completed at a cost of about $25,000 and $5,000 to $6,000 had been expended in construction of the milking parlor. All of the structures built or proposed to be built had already been approved by

the Pennsylvania Department of Labor and Industry, the Milk Sanitation Board, and the local sanitation authorities. Until the Cease and Desist Order was served on him June 1, 1966, appellant did not know that the new Zoning Ordinance had been enacted on August 17, 1965, requiring a distance of 100 feet between his barn and unattached silos and the boundary of his property or that a building permit was required for construction of farm buildings.

"Edward Wilson and William H. Wilson are owners of a six acre tract adjoining appellant's lands on the south. They have intervened in this appeal. Edward Wilson resides on another tract abutting the east side of Route 100 a short distance south of appellant's farm. About April 27, 1966, he inspected appellant's building operation, believed it to be in violation of the 100 foot setback requirement, and on April 28, 1966 so notified the Township Zoning Officer who checked the site the same day and confirmed to Mr. Wilson the violation. Mr. Wilson has served as a member of the West Goshen Township Planning Commission since before the enactment of the August, 1965, Zoning Ordinance.

"Soon after the Cease and Desist Order of June 1, 1966, at the suggestion of the Zoning Officer and the Building Inspector, appellant consulted the Messrs. Wilson and offered to buy either the whole of their six acre tract bounding him on the south or a sufficient amount of it so that his barn and silos would be 100 feet from his property boundary but his offers were refused on the basis of a long standing disagreement between one of the Wilsons and appellant. Thereafter on August 1, 1966, he applied for a building permit for construction of his barn and silos at the locations already established. The

permit was refused the same day on the ground of failure to comply with the provisions of Section 501.6 of the August, 1965, Zoning Ordinance requiring the 100 foot setback from a property line. Appellant then appealed to the Board of Adjustment which sustained the action of the Zoning Officer and this appeal ensued.

"Appellant bases his appeal and his argument on four grounds: (1) the existence of a vested right to construct the buildings, or of a nonconforming use, (2) laches of the Township and its estoppel to refuse the building permit, (3) the right to the grant of a variance, and (4) the unconstitutionality of Section 501.6 of the Zoning Ordinance of August, 1965 in imposing the 100 foot setback limitation."

An application by Waltz under the provisions of Supreme Court Rule 68½ for review of that decision was refused.

The next encounter between these parties occurred in 1968 when the present plaintiffs sought to compel the Township supervisors through mandamus to enforce the "side yard" provisions of the ordinance against defendant. Defendant was permitted to intervene in that action. Plaintiffs were not successful. See Wilson v. Board of Supervisors, 17 Chester County Representative 136 (1968). No appeal was taken from that decision.

Plaintiffs now contend that they have shown that special damage which entitles an individual injured by the zoning violation, as distinguished from the municipality enacting the ordinance itself, to equitable relief. In addition to the facts recited in the above quotation from Judge Gawthrop's opinion, plaintiffs have shown that on occasions during the silo-filling season dust from that operation blows from defendant's property onto their

property when the wind is in that direction. They also contend that their land, being vacant and undeveloped, is particularly suitable for residential development and that the maintenance of these structures upon defendant's land in close proximity to the common boundary creates a detrimental influence upon such development. In support of that contention they assert that such maintenance of these structures creates a potential fire hazard and that the open space now existing between the structures and the property line renders ready access through that space by fire-fighting equipment difficult, if not impossible. A real estate expert, testifying for plaintiffs offered the opinion that the plaintiffs' property has been depreciated in value by reason of this situation from $19,200 to $16,400 a difference of $2,800.

Defendant has shown that on April 5, 1968, almost a year after Judge Gawthrop's decision in the zoning case had been announced, he presented an application to the Zoning Officer of West Goshen Township for a permit to "alter a 1 story farm building" on the property. A plan submitted with that application indicates that the proposed building was to be located north of and immediately contiguous to the silos already there and that on its northern side it would abut the existing barn, thereby enclosing the open area which theretofore existed between the silos and the barn. Under date of April 24, 1968, the township supervisors notified defendant's counsel that no permit for the construction of this alteration was required. This structure was erected for use as an area in which the unloading and storage of farm machinery and feed would be carried on. In addition, it was used for the storage and mixing of feed, some which passed through that area as it was being con-

veyed from the silos to those parts of the barn in which the cattle were fed. Photographs admitted into evidence, some of which were taken in preparation for the hearing in the zoning case, and others in preparation for the instant case, show the transformation of the open area theretofore existing to the enclosed area just described.

Defendant contends that by so doing he has satisfied the provisions of section 501.6-6 of the ordinance pertaining to the regulation of farms and farm buildings which provides: "Silos and bulk bins shall be exempt from the restrictions contained in that section, some of which deal with setback requirements when attached to an existing building." Plaintiffs contend that Judge Gawthrop's decision in the zoning case is the law of this case and that inquiry may not now be pursued upon that phase of the matter.

To accept plaintiffs' argument would be to deny to a landowner, whose property has been judicially found to contravene the regulations of a zoning ordinance, the right to correct the conditions which offend against those provisions. Such a result is patently unjust. We must consider whether these structures as they presently exist qualify for the exemption.

We have little difficulty in deciding that the silos are now attached to the barn through the link supplied by the construction following the application of April 1968. Cf. Frost v. Metropolitan Life Insurance Company, 337 Pa. 537 (1940). We have great difficulty concluding that those structures are now attached to an "existing building" within the meaning of the ordinance. We believe that the reference here made in the ordinance is to buildings which "existed" at the time the ordinance came into effect. The prior litigation clearly demonstrates that

this building, i.e., the defendant's barn, did not exist as of that date. With the case in this posture, we must next consider whether on the instant record plaintiffs are entitled to equitable relief.

"The law in this area is well-settled. In Burne v. Kearney, 424 Pa. 29, 32, 225 A. 2d 892 (1967), we said: '. . . as a prerequisite to the attachment of equity jurisdiction, the adjoining or nearby property owner must aver—and later prove—that the alleged violation of the zoning ordinance has resulted in an injury not common to all the neighboring property owners but "special and peculiar" to his property.' See also: Kunkle v. Zaleski, 417 Pa. 631, 208 A. 2d 840 (1965); Phillips v. Griffiths, 366 Pa. 468, 77 A. 2d 375 (1951); DeBlasiis v. Bartell & Oliveto, 143 Pa. Superior Ct. 485, 492, 18 A. 2d 478 (1941)": Lynch v. Gates, 433 Pa. 531, 533, 534 (1969).

In that case, the question before the court was whether the complaint in equity stated a cause of action requiring an answer. It averred that defendant whose property adjoined that of plaintiffs was constructing an apartment house upon his land in violation of the provisions of the zoning ordinance. It further averred that, as a consequence of that construction, plaintiffs would be subjected to an increase of noise and congestion; that there would be an increase in automobile and truck traffic in close proximity to their homes; that there would be added noise and congestion by reason of a parking lot installed in connection with the apartment house; that there would be an excessive number of people living in the same area with the result that the plaintiffs would be deprived of the privacy to which they were entitled under the zoning ordinance; that plaintiffs would be deprived of light and air to which they were

entitled under the zoning ordinance; and that other sources of noise, congestion and commotion would be created upon the defendant's land to the plaintiff's detriment. In passing upon the sufficiency of those allegations, the court said at page 535: "Our examination of the allegations . . . convinces us that the complaint does meet the standards set forth in our case law, that it does aver injury and damage to the Lynch and Luptak properties not common to all other property owners in the vicinity and that these allegations are sufficient to entitle the Lynches and Luptaks to their 'day in court.' "

In the instant case, plaintiffs have shown the problem of dust during the silo-filling season plus the depreciation in the value of their land. There is also some testimony concerning barn odors and the noise of machinery. We are not impressed with this latter testimony. In this locality where there are still open spaces interspersed with single-family dwellings and in which some farming is still carried on, these distractions, which we do not believe rise to the point of becoming annoyances, amount to no more than might be reasonably expected in a community of this character. In addition, there is no showing that by removing the silos and that portion of the barn which intrudes upon the restricted area to a point beyond the legal limit prescribed by the ordinance, plaintiffs' complaints would be satisfied or alleviated.

Concerning the depreciation of property values, the Supreme Court said in a footnote to Burne, supra, appearing at page 33: "By analogy to our case-law dealing with zoning, diminution in value of a property per se, does not equate the requisite 'special and peculiar' injury to property. See Hollearan v. Silverman, 338 Pa. 346, 12 A. 2d 292 (1940);

Kerr's Appeal, 294 Pa. 246, 144 A. 81 (1928); Boyle Appeal, 179 Pa. Superior Ct. 318, 116 A. 2d 860 (1955)."

However, in Phillips, supra, the court said:

"The protection of property values is an incident of zoning laws and where an adjoining property owner can show that his property is damaged as a result of a violation of the zoning regulations, he has a right to appeal to the courts for aid in enjoining the continuing infraction of the laws": citing DiBlasiis, supra, 143 Pa. Superior Ct. 485. See also Harrison v. Upper Merion Township Zoning Board of Adjustment, 45 D. & C. 2d 452 (1968).

An examination of the cases cited in support of the Supreme Court's footnote to Burne indicates that in each instance a property owner was asserting that the value of his property would be diminished by the enactment of a zoning ordinance or by the enforcement of the provisions of one. The effect of these holdings is that an otherwise valid ordinance will not be struck down nor will the enforcement of its provisions as to a particular property be enjoined merely because the values of the property affected or of others in the same locality may thereby be diminished. Indeed, in Kerr's Appeal, the decision of the Supreme Court of the United States in Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S. Ct. 114 —, 71 L. Ed. 303 (1926), was cited as support for that proposition. Despite the reliance of the Pennsylvania Court upon those authorities it would seem that they do not provide direct support to the rule for which they are there cited.

On the other hand, Phillips v. Griffiths, supra, deals with the precise question here being considered. As indicated in Pyzdrowski v. Pittsburgh Board of Adjustment, 437 Pa. 481, 490 (1970), Phillips holds that

equitable relief may be provided for one who claims that the value of his property has been diminished as the result of "a flagrant and deliberate disregard" of zoning ordinance restrictions limiting his adjoining owner's use or occupation of his property. This is the precise question presented by plaintiffs in this case.

There can be little doubt but that defendant's maintenance of the structures here in question has been in flagrant and deliberate disregard of the pertinent provisions of the West Goshen Ordinance since Judge Gawthrop's decision in Waltz v. Zoning Board of Adjustment, supra, became final. Both of the parties to this action, as well as the municipality enacting the ordinance, were parties in that one. In addition, plaintiffs have presented the only evidence bearing upon the diminution in the value of their property. From this it would follow that the plaintiffs are entitled to appropriate relief against the infraction complained of. They have shown the "special and peculiar" injury to their property which calls for the granting of such relief. Having reached that conclusion we must next determine the form in which that relief will be granted.

The obvious answer in this situation is to require defendant to remove the offending structures to locations within the limits fixed by the terms of the ordinance. The costs of such an operation have not been established by the testimony. Obviously, the expenditures thus incurred would be considerable. When compared to the result to be accomplished, such cost would appear to be large in comparison.

Plaintiffs' proofs indicate that they have suffered a monetary loss of $2,800 through depreciation in value of an undeveloped tract of land valued for its highest and best use of $19,200. Because neither plaintiff occupies the land itself, neither one has been damaged in any manner other than financial. Their

complaints concerning dust and odor must have been taken into account by their real estate expert when he estimated the diminution in value concerning which he testified. Plaintiffs' evidence does not demonstrate that the difficulties concerning fire protection to which they testified cannot be overcome by proper planning in the positioning of structures to be built upon the land if and when it is finally developed and occupied. Because this is a situation in which defendant would be put to great hardship if he is required to remove and relocate the offending structures and, further, because the plaintiffs can be made whole by an award in money, fairness requires that we only direct that plaintiffs be compensated for the loss they have suffered. Our decree nisi will be framed so as to provide for such compensation.

## DECREE NISI

And now, October 13, 1972, the court having determined that plaintiffs are entitled to equitable relief, it is ordered and decreed that within 60 days of the entry of a final decree in this cause defendant shall cause to be removed from that portion of his property which is situate in West Goshen Township in this county, and which abuts the plaintiffs' property at a common boundary forming the northern boundary of plaintiffs' land and the southern boundary of defendant's land, the two silos presently located thereon together with such portion of the barn structure there erected which extends closer to said boundary line than 100 feet; provided, however, that if the defendant pays to plaintiffs the sum of $2,800 within 30 days of the entry of such final decree, then the removal of the structures aforesaid as hereinabove directed shall not be required.

Defendant will pay the costs.