Appeal of: Lewis Kates et al. from decision of Cheltenham Township Zoning Hearing Board. Lewis Kates and Judith Kates, John Leonard and Barbara Leonard, Donald Mayer and Vera Mayer and Arnold Zaslow and Brenda Zaslow, Appellants. (2 Cases)

146

Argued April 5, 1978, before President Judge Bow-
man and Judges Crumlish, Jr., Wilkinson, Jr., Men-
cer, Rogers, Blatt and DiSalle.

*Lewis Kates,* with him *Joseph R. Livesey,* and *Kates & Livesey,* for appellant.

*Frank L. Newburger, III,* with him *Samuel H. High, Jr.,* Solicitor, for appellee.

*Morris Gerber,* with him *Gerber, Maerz, Wilenzik & Shields,* for intervenor.

OPINION BY JUDGE BLATT, October 16, 1978:

Two appeals from a consolidated order of the Court of Common Pleas of Montgomery County affirming decisions of the Cheltenham Township Zoning Hearing Board (Board) have been consolidated for argument and opinion of this Court. Lewis Kates and other owners (appellants) of residential property in the neighborhood in which the Crestview Convalescent Home (Crestview) is located have asked us to reverse both the grant of a special exception permitting Crestview's expansion and the decision upholding the validity of a zoning ordinance under which the exception was granted.

Crestview has been operated as a convalescent home since 1953 and is located in an R-3 residential district, as determined by Cheltenham Township's Zoning Ordinance of 1929. Although the use did not conform to the zoning restrictions, Crestview was granted a variance in 1965 to expand from thirty-five to fifty-three beds. Objections to the facility's variance request were withdrawn when the owners of Crestview promised that they would make no further expansion requests. In 1971 Crestview sought, and was granted by the Board, a second variance request to double its occupancy. This action, however, was reversed by the lower court, which found that Crestview had failed to establish the hardship necessary for the grant of a variance.

In March, 1974, Cheltenham Township (Township) Commissioners enacted Ordinance No. 1318 (Ordinance) which added a provision to the nonconforming use section of the existing zoning ordinance to permit special exceptions subject to a number of requirements[1] for "the expansion and/or replacement of an existing nonconforming nursing home or home for the aged" when the building does not comply with township, state or federal regulations "as to size, capacity, safety or type of construction" or when reconstruction, addition or replacement is required to meet such

---

[1] The following eight requirements were included in the Ordinance:

1. The front yard setback required in the district in which the property is located shall not be reduced.

2. There shall be a lot area of not less than one thousand (1,000) square feet for each bed in said nursing home or home for the aged and subject to said requirement that such expansion may extend either to one hundred percent (100%) of the existing bed capacity or to an increase up to an additional one hundred (100) beds in capacity as of the effective date this particular amendment became or becomes effective.

3. As a result of any construction, additions, or replacements to an existing non-conforming structure, the completed facility shall comply, in all respects, with Township, State and Federal regulations applicable thereto.

4. There shall be provided a minimum buffer or open area of 30 feet in depth from all property lines.

5. Parking areas may extend into a buffer area for not less than 10 feet from an abutting property line provided a masonry wall, fence and/or planting of shrubbery, trees or vines shall be provided as the Board may determine is reasonable and proper to afford adequate screening.

6. The area occupied by the building and other applicable requirements for the district in which the non-conforming use exists shall not be reduced except where the lot area or width of the lot does not conform to the regulations of the district in which it is located. Any reconstruction or replacements shall in no way increase said nonconformity as to the lot area or width.

regulations "in order to provide Health Insurance Benefits to all occupants or patients." Crestview applied for a special exception to expand its facility from seventy to one hundred seventy beds pursuant to the Ordinance, and the Board granted the special exception on June 18, 1974. On appeal, the lower court dismissed the appellants' objections and affirmed the grant of the special exception but limited the number of beds to 153.[2] In a separate appeal to the lower court, these same appellants challenged the validity of the Ordinance, but the lower court also affirmed the Board's determination of its validity. Now before us is a review of the propriety of the grant of the special exception and the validity of the Ordinance.

Our scope of review here, in a case where the lower court has taken no additional evidence on an appeal from a zoning board, is limited to a determination of whether or not the Board committed an abuse of discretion or an error of law. *Warwick Land Development Corporation v. Board of Supervisors*, 31 Pa. Commonwealth Ct. 450, 376 A.2d 679 (1977).

The appellants first argue that the Ordinance permitting the expansion of nursing homes was designed

---

7. There shall be at least one parking space for each three beds in nursing homes and at least one parking space for each two (2) living units in homes for the aged in accordance with the general provisions of Section 2304 for off street parking, and in addition, there shall be a minimum of 10 per-cent within the boundaries of the parking area established for use as green area.

8. Such reconstructed buildings shall not exceed three stories in height or 40 feet.

[2] The lower court reasoned that because the 1965 variance permitted Crestview to operate with a maximum of fifty-three beds, even though Crestview had seventy beds, the Ordinance permitted only the addition of one hundred beds to the number permitted by the variance.

for the benefit of four specific landowners and that it, therefore, constitutes unlawful spot zoning. We find no merit in this argument because the Ordinance does not *rezone* any property but merely permits the expansion of existing buildings if they meet certain criteria set forth in the Ordinance. Spot zoning is defined as " ' "[a] singling out of . . . a small area [of land] for different treatment from that accorded to similar surrounding land. . . ." ' " *Mulac Appeal,* 418 Pa. 207, 210, 210 A.2d 275, 277 (1965). Spot zoning is nevertheless a concept of land *classification.* The Ordinance in question here does nothing to alter the zoning classification of the land on which nursing homes are located and it does not, therefore, spot zone any property.

The appellants' second argument is that the effect of the Ordinance is to give special treatment to four landowners without requiring them to prove their entitlement to a variance and that the Ordinance is, therefore, invalid. A court must presume the validity of an ordinance and the burden of proving its invalidity rests with the party challenging it. *Cleaver v. Board of Adjustment,* 414 Pa. 367, 200 A.2d 408 (1964). Furthermore, the challenging party must clearly establish that the Ordinance is arbitrary and unreasonable, with no relation to the public health, safety, morals and general welfare, and if the validity is debatable the court will defer to legislative judgment. *Schubach v. Silver,* 461 Pa. 366, 336 A.2d 328 (1975). We must conclude, as the lower court did, that the appellants have not met their heavy burden of proving that the Ordinance is either arbitrary or unreasonable. There is ample evidence in the record to substantiate the conclusion that the singular purpose of the Ordinance was to ensure the continued availability of nursing and convalescent services within the neighborhood. The Township recognized that if ex-

pansion or alteration of the presently existing fa-
cilities was precluded, these facilities could be closed
for failure to meet state or federal standards, and
that special consideration was required to prevent
their closing. The Ordinance contains a number of
restrictions, however, designed to protect the inter-
ests of the abutting property owners as well. We be-
lieve that the Ordinance does promote the general
welfare of the surrounding community and that it has
a rational relationship to a legitimate zoning objec-
tive. We cannot agree, therefore, that the Ordinance
should be held to constitute an invalid discrimination.

Holding as we have that the Ordinance itself is
valid, we have been asked to consider, in addition,
whether or not Crestview was entitled to a special
exception as provided by the Ordinance. The appel-
lants contend that Crestview is not a "non-conform-
ing use" and that it, therefore, does not meet the cri-
teria for the grant of a special exception.

The Ordinance provides that the Board "may per-
mit as a special exception the expansion and/or re-
placement of an existing non-conforming nursing home
or home for the aged. . . ." The meaning of the term
"non-conforming" is not specifically set out in the
Ordinance, although the term "non-conforming use"
is defined in the Cheltenham Zoning Ordinance of
1929 and its subsequent amendments to mean "any
land, the existing lawful use of which at the time of
passage of this Ordinance does not conform with the
regulations of the district in which it is located." It
is clear from the record that Crestview does not quali-
fy as a "non-conforming use" because it did not op-
erate prior to 1929, when the zoning ordinance was
first adopted. Nevertheless, we believe that the term
"non-conforming nursing home" was intended to mean
a facility which did not conform to the zoning classi-
fication *at the time of the passage of Ordinance No.*

*1318*, in March, 1974. In its decision on the appellants' challenge to the validity of the Ordinance, the Board specifically found:

> At the present time there are existing in Cheltenham Township three nursing homes and one old age home, all operating as non-conforming uses in the various zoning areas in which such facilities exist. The nursing homes are the Crestview Nursing Home, Hopkins Nursing Home, The Oaks, and the old age home known as The Wyncote.

Crestview had operated its facility for twenty-one years prior to passage of the Ordinance, and no one had previously challenged the use as a nonpermitted one. Furthermore, the municipality had recognized the use by granting Crestview a variance in 1964. A property owner who uses his property, in obvious violation of a zoning ordinance for a long period of time and with apparent acquiescence of the municipality, acquires a vested right in such use. *Township of Haverford v. Spica*, 16 Pa. Commonwealth Ct. 326, 328 A.2d 878 (1974). And we have previously refused to reverse the granting of a permit based upon a nonconforming use where the use had existed for thirty-six years but was not in existence prior to the Ordinance and was not, therefore, a "non-conforming use" in the technical sense. *Id.*

It is unfortunate that the Township chose to use a term which ordinarily has a well-recognized, technical meaning, but we are satisfied that the Ordinance in question here was intended to include Crestview because Crestview was "non-conforming" at the time the Ordinance was enacted. We do not believe that the Board abused its discretion in finding that Crestview qualified for a special exception as a "non-conforming nursing home."

The appellants have raised several other arguments with respect to the Board's findings as they relate to Crestview's eligibility for the special exception. We have carefully reviewed the record and we believe that it contains the requisite evidence of the need for expansion to satisfy state and federal regulations and that the Board could, therefore, conclude that Crestview qualified for a special exception. We also find no merit in the appellants' contention that Crestview should be bound by the promise of its owner in 1965 that it would seek no further expansions.

Within our limited scope of review, we find that the Board committed no abuse of discretion or error of law in upholding the validity of the Ordinance and in granting a special exception to Crestview for the expansion of its facility. We will, therefore, affirm the order of the lower court.

### ORDER

AND Now, this 16th day of October, 1978, the consolidated order of the Court of Common Pleas of Montgomery County, dated March 30, 1977, is hereby affirmed.