**HINES NURSERIES, INC.,
t/a Hines Color**

v.

**PLUMSTEAD TOWNSHIP BOARD
OF SUPERVISORS**

**Appeal of Ari Van Wingerden.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2003.

Decided Feb. 20, 2004.

Reargument En Banc Denied
April 19, 2004.

Robert J. Sugarman, Philadelphia, for appellant.

Stephen P. Imms, Jr., Harleysville, for appellee.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN, Judge, and SIMPSON, Judge.

OPINION BY Judge COHN.

Ari Van Wingerden (Van Wingerden) appeals from that portion of the February 11, 2002 order of the Court of Common Pleas of Bucks County that affirmed the decision of the Plumstead Township (Township) Board of Supervisors (Board) to attach certain conditions to the Subdivision and Land Development Application (Application) filed by Hines Nurseries, Inc. t/a Hines Color (Hines). Van Wingerden challenges three of nine conditions imposed by the Board, and presents the following issues for the Court's review: (1) the Application should be deemed approved without conditions because the Board failed to conform to the mandate of Section 508(2) of the Municipalities Planning Code (MPC);[1] (2) the Board had no authority to consider a prior stipulation between the Township and Van Wingerden; (3) conditions 4, 5 and 6 are invalid because they restrict the use of the Van Wingerden's property without due process; (4) the trial court should have granted Van Wingerden's request to present evidence; (5) the Board's interpretation of the stipulation should not be enforced; (6) the conditions imposed by the Board are an unconstitutional taking; and (7) the conditions imposed by the Board are illegal as spot zoning. We will address these issues seriatim after a recitation of pertinent facts.

Hines is the owner of a 19.43–acre property on Durham Road in the Township, Bucks County, Pennsylvania, identified as Bucks County Tax Map Parcel (TMP) No. 34–4–39. Hines is also the lessee and equitable owner of an adjacent 17.22–acre property, which is part of a larger property owned by Van Wingerden and identified as Bucks County TMP No. 34–4–45. Hines conducts an intensive agricultural use on these properties utilizing greenhouses.

The aforementioned properties are among five parcels that are subject to a Stipulation, dated August 4, 1989, and an Agreed Order entered by the trial court adopting the Stipulation, dated August 7, 1989, which settled a zoning dispute between Van Wingerden and the Township concerning Van Wingerden's request for a building permit to construct additional greenhouses on the properties. Pursuant to the Stipulation and Agreed Order, all present and future plastic-covered greenhouse structures were to be regarded as buildings under the Township's Zoning Ordinance (Ordinance), and, as such, they were subject to the fifteen percent building coverage restriction set forth in Section 302.2 of the Ordinance prior to amendment on July 18, 1989.[2] (Stipulation, August 4, 1989, No. 3.) Additionally, the Stipulation and Agreed Order provided that the Township issue Van Wingerden a building permit for five acres of greenhouses, but permit no more than twenty-one acres of plastic-covered greenhouse structures on the subject parcels.[3] (Id., No. 4.)

1. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10508(2).

2. We did not find a copy of the Ordinance *as amended on July 18, 1989*, in the record. We believe the only version of the Ordinance provided to the Court was the Ordinance as amended in 2001. However, Van Wingerden has not raised an argument that the Ordinance *as amended on July 18, 1989*, applies to his property.

3. The Stipulation and Agreed Order provided, in relevant part:
    2. The subject property consists of approximately 140 contiguous acres of real estate located within Plumstead Township, consisting of Bucks County Tax Parcel Nos. 34–4–39, 34–4–38–1, 34–4–38–2, 34–4–45 and 34–4–36.
    3. All present and future plastic-covered greenhouse structures located upon the subject property shall be regarded under

On September 11, 2000, Hines submitted an Application to the Board; the Application was in the nature of lot line adjustment, which proposed to consolidate the 17.22 acres leased by Hines from Van Wingerden, currently part of TMP No. 34-4-45, with TMP No. 34-4-39, the adjacent land owned by Hines. Hines' Application did not propose the construction of any additional greenhouses or other structures.

■ At a Board meeting, the Board members considered the Application,[4] and indicated that they were inclined to grant conditional approval, provided that there was an understanding, based on the Stipulation and Agreed Order, regarding the

restrictions relating to the greenhouses. Subsequently, the Board sent a letter (Decision) to Hines granting conditional approval of the Application, subject to nine conditions. Hines filed a land use appeal with the trial court, challenging condition numbers 5, 6, 8 and 9 of the Board's Decision. Subsequently, the trial court granted Van Wingerden leave to intervene, but denied his request to present evidence. Van Wingerden challenged condition numbers 4, 5 and 6.[5] The trial court struck condition numbers 8 and 9 of the Board's Decision, but upheld the remaining conditions challenged by Hines and Van Wingerden. Van Wingerden now appeals to this Court from the trial court's order.[6]

the Zoning Ordinance of Plumstead Township as buildings and, consequently, shall be subject to the 15% building coverage restriction set forth in Section 302.2 of the Zoning Ordinance prior to amendment on July 18, 1989.

4. [Van Wingerden] and/or East Coast Growers, Inc. shall be permitted to place a maximum of 21 acres of plastic-covered greenhouse structures on the subject property, in addition to such other buildings and structures presently existing, or which may be approved by the Township in the future. This maximum of 21 acres of greenhouses specifically includes the existing 10 acres of greenhouses and the one acre of greenhouse constructed to date under the building permit which is the subject of this litigation.

5. The Township shall immediately issue [Van Wingerden] a building permit for the additional five acres of greenhouses, consistent with this Stipulation, providing that the other Township requirements are met.

(Stipulation, August 4, 1989, pp. 1–2.)

4. The Board heard only arguments from the parties' lawyers; no evidence was presented.

5. The conditions relevant here provide:

4. It is understood and the plans show that TMP 34-4-39 containing 19.58 acres has an existing plastic covered greenhouse of 12.041 acres. Pursuant to the [Stipulation and Agreed Order], an open lot area of 80 acres is required to support the existing 12 + acre plastic covered greenhouse.

5. The final plan must show an area of at least 80 acres which has been set aside to support the existing 12 acres of plastic covered greenhouses. This 80 acre tract may be shown on any of the parcels, or a combination thereof, that were listed in the [S]tipulation and [Agreed O]rder. The 80 acre tract will be shown by heavy line or cross hatching. If additional plastic covered greenhouses have been constructed beyond the 12 acre amount shown on the preliminary plan, appropriate adjustments must be made on the final plan to provide additional open lot area to accommodate the amount of plastic greenhouse above 12 acres.

6. The final plans will not be released by the Township for recording until they bear the signature of all of the owners of the properties involved in the lot line change. In addition to the signatures of the owners, the final plan must contain a statement agreeing to the setting aside of open lot area in accordance with the stipulation, court order, and the following formula a) "acres of greenhouse to be constructed divided by .15 equals number of acres needed in support".

(Letter to Counsel for Hines regarding preliminary approval of subdivision plan, dated April 2, 2001, (Denial Letter), p. 2.)

6. In a land use appeal, where, as here, the trial court has taken no additional evidence, our scope of review is limited to determining whether the Board abused its discretion or committed an error of law. *See Board of*

Van Wingerden first argues that the Application should be deemed approved without conditions [7] because the Board's Decision failed to specify the defects in Hines' Application and failed to cite to the provisions of the statute or ordinance relied upon, as required by Section 508(2) of the Pennsylvania Municipalities Planning Code (MPC).

■ Section 508(2) of the MPC provides:

When the application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon.

53 P.S. § 10508(2). Because Hines rejected some of the conditions in the Board's preliminary, conditional approval letter of April 2, 2001, the Board is deemed to have rejected the application as filed. *Board of Township Commissioners of Annville Township v. Livengood*, 44 Pa.Cmwlth. 336, 403 A.2d 1055 (1979). Therefore, the mandatory language of Section 508(2) requires that the Board's decision specify the defects found in the application, describe the requirements that have not been met, and cite to the provision of the statute or ordinance relied upon. 53 P.S. § 10508(2); *Board of Commissioners of Lower Merion*

*Township v. Haslett*, 69 Pa.Cmwlth. 1, 450 A.2d 298 (1982).

■ Although the denial letter itself does not specifically cite a statute or ordinance provision, it incorporates by reference, and attaches a copy of the previously mentioned Stipulation and Agreed Order,[8] which cites to Section 302.2 of the Township Zoning Ordinance prior to amendment on July 18, 1989. (Letter to Counsel for Hines regarding preliminary approval of subdivision plan, dated April 2, 2001, (Denial Letter), pp. 1–2, no. 2; [9] Stipulation, p. 1, no. 3.) Incorporation of a document by reference may be used to satisfy the requirements of Section 508(2). *Advantage Development, Inc. v. Board of Supervisors of Jackson Township*, 743 A.2d 1008 (Pa.Cmwlth.2000). The Stipulation, dated August 4, 1989, and Agreed Order, dated August 7, 1989, pertain to five parcels of land, two of which are directly involved in Hines' application. Hines owns one of the five parcels subject to the stipulation, and this parcel is involved in the application. Van Wingerden owns the other four parcels, one of which is involved in this application. The Stipulation interprets Section 302.2 of the ordinance, prior to amendment on July 18, 1989, and describes in detail the law that controls development on the parcels of land involved

Commissioners of Lower Merion Township v. Haslett, 69 Pa.Cmwlth. 1, 450 A.2d 298 (1982).

7. Alternatively, Van Wingerden asks this Court to strike condition numbers 4, 5 and 6. Because these are the only conditions Van Wingerden challenged before the trial court, we will limit our review to these conditions.

8. *See* page 2.

9. Paragraph 2 reads as follows:
These properties are subject to a stipulation and court order dated August 7, 1989. The court order of Judge William Hart Rufe

approved a settlement stipulation in the case of *Arie J. Vanwingerden [sic] v. Zoning Hearing Board of Plumstead Township*, No. 88–0051–09–5. **A copy of the stipulation and order is attached to this preliminary plan approval and is incorporated herein.** The stipulation pertains to tax map Nos. 34–4–39, 34–4–38–1, 34–4–38–2, 34–4–45, and 34–4–46. Two of the tax map parcels named in the stipulation are involved in the within lot line adjustment.
(Emphasis added.)

in this case.[10] The Board's letter specified the defects in Hines' application,[11] described the requirements that have not been met,[12] and included the provision in the Ordinance relied upon, and thus, adequately complied with the requirements of Section 508(2) of the MPC.

■ In his next argument, Van Wingerden relies on *Amerikohl Mining, Inc. v. Mount Pleasant Township*, 727 A.2d 1179 (Pa.Cmwlth.1999) (holding that property settlement agreements are regarded as contracts), and *In re Michener*, 382 Pa. 401, 115 A.2d 367 (1955) (holding that consideration of building restrictions placed upon property by private contract has no place in proceedings under zoning laws), when he claims that the Board had no authority to consider a prior stipulation between the Township and him in making its decision, because the Stipulation is a contract, and as such, is irrelevant to land use determinations. We disagree.

■ The stipulation between Van Wingerden and the Township was the result of a *settlement of a judicial proceeding* under court supervision and has the force and effect of law. Court-approved settlements of zoning cases are lawful.

*See Summit Township Taxpayers Association v. Summit Township Board of Supervisors*, 49 Pa.Cmwlth. 459, 411 A.2d 1263 (1980). Further, "parties may stipulate the law of the case and be bound by their act **in all matters** which affect them so long as the stipulation does not affect the jurisdiction and prerogatives of the court." *Conyer v. Borough of Norristown*, 58 Pa.Cmwlth. 629, 428 A.2d 749, 751 (1981) (emphasis added). Here, it is obvious that the Stipulation did not affect the trial court's jurisdiction or prerogatives; indeed, it *affirmed* the Board's decision, which was, in turn, based on the Stipulation. In essence, therefore, Van Wingerden and the Township stipulated to the law of the case, and both are thus bound by the terms of that Stipulation, which interprets an ordinance that applies to *all* property in the Township, including land that Van Wingerden owns. Van Wingerden is attempting to sell Hines a parcel of his property; that **property** is bound by the terms of the Stipulation. Therefore, it would have been error for the Board *not* to have considered the Stipulation in its decision.

Further, basic facts in *Amerikohl Mining* and *Michener* differ from those in the

10. Paragraph 3 of the Denial Letter, summarizing what is contained in the Stipulation, states:

> The stipulation provides that all future plastic covered greenhouses constructed on the property shall be limited to a fifteen percent building coverage. Since the entire tract contains 140 acres, it was agreed that the maximum number of plastic covered greenhouses that could be permitted on the entire 140 tract was 21 acres.

11. For example, paragraph 1 of the Denial Letter states that clarification is required with respect to the owner of parcel 34–4–39, because it is unclear in the application.

12. For example, paragraph 4 of the Denial Letter explicitly states that an open lot area of 80 acres is required to support the existing

12+ acres of greenhouses; paragraph 5 requires the 80 acres set aside, pursuant to paragraph 4, be indicated on the final plan in any of the parcels, or a combination thereof, by heavy line or cross hatching; paragraph 6 requires the final plan bear the signatures of all owners of property involved in the lot line change, and include "a statement agreeing to the setting aside of open lot area in accordance with the stipulation, court order, and the following formula ... 'acres of greenhouses to be constructed divided by .15 equals number of acres needed in support' "; paragraph 7 requires the final plan show compliance with the Township Engineer's various review letters, the review of the Township Planning Commission, and the review of the Bucks County Planning Commission.

case at bar. Those cases concerned building restrictions placed upon property by **private contract;** the private parties alone possessed the right to enforce the restrictions.[13] However, such is not the case in the matter *sub judice.* The 15% building coverage restriction involved here is applicable not only to Van Wingerden's property, but to *any and all property* within the Township harboring an intensive agricultural use. (*See* Ordinance, Section 302.2, prior to amendment of July 18, 1989.)

■ We next address Van Wingerden's third issue, that conditions 4, 5 and 6 are invalid because they restrict the use of his property without due process. Van Wingerden argues that, because he was not a party to Hines' application, he had no way of knowing that the Board might impose conditions on its approval of Hines' application that would require concessions to other land *he* owns that was not the subject of the subdivision application. However, but for the Stipulation that Van Wingerden had previously agreed to, no action on the part of the Board in ruling on the lot line adjustment would have impacted on Van Wingerden. That Van Wingerden did not foresee the subsequent ramifications of that Stipulation does not mean there has been a denial of due process.

■ As his fourth issue, Van Wingerden argues that the trial court should have granted his request to present evidence because he was denied the opportunity to present evidence before the Board. He also claims that without such evidence, the trial court could not adequately consider the issues or properly adjudicate the case.

Contrary to his argument here, Van Wingerden does not obtain an entitlement to present evidence before the trial court merely because he "was denied the opportunity" before the Board. Rather, Section 1005–A of the MPC, 53 P.S. § 11005–A, provides in pertinent part:

> **If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence,** a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence.

(Emphasis added.)

The trial court denied Van Wingerden's request to present additional evidence, and provided numerous reasons for its decision. First, the court noted that Van Wingerden failed to file *a motion,* as *required* by Section 11005–A of the MPC, but rather, included his request in a memorandum of law. The court commented that "[w]e believe that this fact alone serves as justification for denying the relief requested." (Trial ct. op. at 8.) Second, while Van Wingerden proffered a description of evidence he intended to present, the trial court, again in its discretion, did not consider the evidence to be "relevant."[14] The court noted that

---

13. In *Amerikohl Mining,* a coal mining company brought an action against Mount Pleasant Township, seeking a declaration that its settlement agreement with the town resolving a nighttime noise nuisance applied only to its two surface mining sites in operation when the agreement was executed. The settlement agreement made no reference to any particular coal mining site. In *Michener,* building restrictions were placed in deeds, whereby the owner, his heirs, executors, administrators and assigns, together with the grantor, his heirs and assigns, agreed never to erect certain kinds of buildings upon the property. Both of these cases involved *private* restrictions, which courts have found to be immaterial in zoning cases.

14. Van Wingerden described the evidence as follows: "If the court finds the interpretation of the Stipulation to be properly before it, Van Wingerden should be granted the opportunity

Van Wingerden's request was based upon *legal* issues, and failed to show that proper consideration of such issues *required* the presentation of additional evidence. Third, the court noted that the record essentially contained what was necessary for making a decision, including, *inter alia,* a transcript of the Board's meeting of March 20, 2001, copies of the Stipulation and Agreed Order at issue, and various other detailed exhibits.[15] While all of these reasons are sound, the second one, in particular, is compelling; it is not for the parties to tell the court how to interpret its own orders. That is what Van Wingerden sought to do by seeking to present additional evidence to show that the Stipulation had become an order of the court.

As his fifth argument, Van Wingerden claims that the Board's interpretation of the Stipulation should not be enforced, but rather, deemed void under the doctrine of mutual mistake.

■ Van Wingerden states that he understood the stipulation to allow 21 acres of plastic covered greenhouses *in addition to* such other buildings as presently existed or might be approved in the future. He states further that the Boards interpretation that the limitation applied to *all buildings,* of which plastic covered greenhouses were one type, was wrong. However, as stated by the trial court, [t]he Stipulation contains five paragraphs, which **when read together,** reveal the intent of the parties in clear and unambiguous terms, (Trial ct. op. at 11) (emphasis added), which was to confirm that greenhouses were to be considered as buildings un-

der the zoning ordinance, and subject to the Townships limitations on building coverage. We agree and find no basis for reversal on a theory of mutual mistake here. Even were there such a mistake, however, it would be one of law *i.e.,* legal interpretation, and not of fact.

■ In his sixth issue, Van Wingerden argues that the conditions imposed by the Board are an unconstitutional taking because they "drastically burden[]" his land, impose restrictions that exceed those in the stipulation, and deprive him of the lawful use of his property. We disagree.

The conditions imposed by the Board's decision merely incorporate, by reference, the earlier restrictions of the stipulation that Van Wingerden himself had previously negotiated and to which he expressly agreed. The conditions do not, in any fashion, further deprive Van Wingerden of any right to use and enjoy his property. Furthermore, to determine whether a zoning ordinance constitutes a taking of private property without just compensation, the diminution in value test is frequently used, which classifies a property as taken when it is rendered valueless or no longer useful in a reasonable manner. *Snyder v. Railroad Borough,* 59 Pa.Cmwlth. 385, 430 A.2d 339, 345 (1981) (citing *Pennsylvania Coal Company v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922)). That is not the case here. Van Wingerdens property is no more limited or regulated after the Boards action than it was at the time Van Wingerden voluntarily and knowingly entered into the Stipulation that first created the restrictions.

to present evidence that the interpretation set forth by the Township is not what the parties intended when the Stipulation was agreed to." (Van Wingerden's Memorandum in Support of Appeal and Motion for Leave to Present Evidence, filed October 15, 2001, p. 10.)

**15.** The court also noted that these documents indicated that counsel for Hines acknowledged that the Order (settlement agreement) was binding on *all* 140 acres, including Van Wingerden's property. (*See* N.T., March 20, 2001, pp. 7–8.)

Finally, we address Van Wingerden's claim that the conditions imposed by the Board are illegal as spot zoning. Van Wingerden argues that, although his land is identical to the surrounding properties and is indistinguishable in character, the Board has *de facto* rezoned his land to his economic detriment by singling it out for more restrictive treatment.

Spot zoning can be defined as "[a] singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment...." *Schubach v. Silver*, 461 Pa. 366, 382, 336 A.2d 328, 336 (1975). The most determinative factor in an analysis of a spot zoning question is whether the parcel in question is being treated unjustifiably different from similar surrounding land, thus creating an island having no relevant differences from its neighbors. *Mulac Appeal*, 418 Pa. 207, 210 A.2d 275 (1965). When faced with a spot zoning challenge, a reviewing court must presume the zoning ordinance is valid and constitutional; the burden of proving otherwise is on the challenging party, who must show that the provisions are arbitrary and unreasonable, and have no relation to the public health, safety, morals, and general welfare. *Schubach. See also Cleaver v. Board of Adjustment of Tredyffrin Township*, 414 Pa. 367, 200 A.2d 408 (1964).

Van Wingerdens spot zoning argument has no merit primarily because spot zoning is a concept of *land classification. Appeal of Kates*, 38 Pa.Cmwlth. 145, 393 A.2d 499, 501 (.1978). Van Wingerden is challenging *conditions* placed upon his land that derive from a court-approved stipulation to which he was a party; that

stipulation did not alter the zoning classification of the land or amend the zoning ordinance, and does not, therefore, spot zone the property. *See id.* Further, the 15 building coverage restriction applies to *any* property on which an intensive agricultural use is proposed, as set forth in Section 302.2 of Ordinance prior to amendment on July 18, 1989, so there is no differential treatment involved. (*See* Stipulation, August 4, 1989, No. 3.)

Accordingly, pursuant to the analysis in this opinion, the order of the trial court is affirmed.

### ORDER

**NOW,** February 20, 2004, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed.

Dissenting OPINION BY Judge FRIEDMAN.

I respectfully dissent. Unlike the majority, I believe the decision of the Plumstead Township (Township) Board of Supervisors (Board) fails to comport with section 508(2) of the Pennsylvania Municipalities Planning Code (MPC).[1] Therefore, I agree with Ari Van Wingerden's (Van Wingerden) argument that the Subdivision and Land Development Application (Application) filed by Hines Nurseries, Inc., t/a Hines Color (Hines) should be deemed approved without conditions. On this basis, I would reverse the trial court's order.

### Compliance with section 508(2) of the MPC and the Board's authority to consider the Stipulation

Initially, I agree with the majority that, because the Board has rejected Hines' Application as filed, the Board's decision must

---

1. Act of July 31, 1968, P.L. 805, as amended, 53 P.S. § 10508(2).

satisfy the requirements of section 508(2) of the MPC. That section provides:

> When the application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the **statute or ordinance** relied upon.

53 P.S. § 10508(2) (emphasis added). Clearly, section 508(2) mandates identification of every application deficiency and contemplates that each defect found and each unmet requirement be based upon a statute or ordinance.

Therefore, the Board's decision here must (1) specify the defects found in Hines' Application,[2] (2) describe the requirements that have not been met,[3] and (3) "in each case" cite to the provision of the statute or ordinance relied upon. 53 P.S. § 10508(2); *Warwick Land Development, Inc. v. Board of Supervisors,* 695 A.2d 914 (Pa.Cmwlth.) (stating that section 508(2) is mandatory and enumerated defects without citation to the provisions of the statute or ordinance relied upon cannot support a denial of the application), *appeal denied,* 549 Pa. 709, 700 A.2d 446 (1997);

*Whiteland Manor Homes, Inc. v. Borough of Downingtown,* 32 Pa.Cmwlth. 274, 378 A.2d 1311 (1977) (holding that compliance with section 508(2) cannot be achieved simply by citing relevant provisions of a statute; the decision must specify the defects in the plan and describe the requirements that have not been met, as well as cite to the statutory authority relied upon). Contrary to the majority's conclusion, I believe the Board's decision fails to satisfy these requirements.

As stated, section 508(2) requires that when an application is denied as filed, any inadequacies leading to denial must be based on a violation of a statute or ordinance, and section 508(2) requires further that the municipal authority specify the inadequacies and "cite to the provisions of the *statute or ordinance* relied upon" for the denial. 53 P.S. § 10508(2) (emphasis added); *Board of Commissioners v. Haslett,* 69 Pa.Cmwlth. 1, 450 A.2d 298 (1982). The Stipulation and Agreed Order is not a statute or ordinance.[4] Therefore, pursuant to the plain language of section 508(2), the Stipulation and Agreed Order itself may not serve as the basis to deny, or place conditions on, the Application.[5] *See*

---

2. The majority concludes that the Board's decision satisfies the requirement to specify the defects in Hines' Application, and, as an example, points out that paragraph 1 of the Board's denial letter states that clarification is required with respect to the owner of parcel 34–4–39. (Maj. op. at 7 n. 11.) However, because this defect has nothing to do with the conditions challenged here, it is irrelevant to the issue Van Wingerden raises before us. Moreover, it is not based on a statute or ordinance.

3. The majority also concludes that the Board's denial letter satisfactorily describes the requirements that have not been met, and, as explanation, the majority simply restates the conditions set forth in the Board's denial letter. (Maj. op. at 8 n. 12.) For the reasons stated in my dissent, I believe this is insufficient to satisfy the mandates of section 508(2).

4. A statute is a formal written enactment of a legislative body...." Black's Law Dictionary 1410 (6th ed.1990) (emphasis added). An ordinance is a "rule established by authority; a permanent rule of action; a law or statute. In its most common meaning, the term is used to designate the enactments of the *legislative body* of a municipal corporation." Black's Law Dictionary 1097 (6th ed.1990) (emphasis added).

5. In concluding that the Stipulation and Agreed Order controls the disposition of this case, the majority misperceives Van Wingerden's argument. Van Wingerden does not suggest that his property is not bound by the terms of the Stipulation and Agreed Order. To the contrary, Van Wingerden conceded at oral argument that his property is bound by the Stipulation and Agreed Order, and noth-

*Haslett* (holding that an agreement between the landowner, two prospective purchasers and the township did not constitute a legally valid independent basis for denial of the application); *cf. Gulla v. North Strabane Township,* 676 A.2d 709 (Pa.Cmwlth.1996) (holding that use restrictions contained in instruments of title and which are created by private contracts are not relevant in zoning cases), *aff'd,* 551 Pa. 588, 712 A.2d 281 (1998).

Nevertheless, the majority concludes that the Board's decision satisfies the requirements of section 508(2) because, while the decision itself does not cite to a statute or ordinance provision, the decision incorporates by reference the Stipulation and Agreed Order, which, in turn, cites to section 302.2 of the Township's Zoning Ordinance *prior to amendment on July 18, 1989.* (Maj. op. at 923.) I recognize that incorporation of a document by reference *may* be used to satisfy the requirements of section 508(2), *see Advantage Develop-ment, Inc. v. Board of Supervisors,* 743 A.2d 1008 (Pa.Cmwlth.2000); however, the incorporated document itself must satisfy those requirements.[6] Because the incorporated Stipulation and Agreed Order fails to do so, I agree with Van Wingerden that the Stipulation and Agreed Order is not a legally valid basis for the Board to deny Hines' Application.

In determining whether an application is defective, the Board may look only to the applicable statutes and zoning ordinance *in effect at the time of its decision on that application.* Here, however, the Board improperly relied on the Ordinance provision referenced in the Stipulation, i.e., section 302.2 *prior to amendment on July 18, 1989.* Because this Ordinance provision is no longer in effect, the Board may not rely on it as the basis for denial of the Application.

More importantly, section 302.2 cannot serve as grounds for the Board's decision

---

ing in his brief contradicts this admission. However, the Stipulation and Agreed Order only binds the parties *with respect to issues regarding the construction of greenhouses and building coverage restrictions.* Because the Application here does not propose to construct any additional greenhouses or other structures, the Stipulation and Agreed Order has no relevance to this Application, which only seeks a lot line change. Consequently, I submit that the majority's discussion of the legal effect of the Stipulation and Agreed Order on the Application is dicta.

6. In *Advantage,* we held that the township's denial letter, which incorporated by reference an engineer's report, fully complied with section 508(2), because, importantly, the engineer's report complied with section 508(2). The engineer's report contained fifty-three separately numbered paragraphs explaining how the plan at issue failed to conform to the township's ordinance, and it specifically referenced the sections of the ordinance that were violated. Additionally, the engineer's report also explained in sixty-four separately numbered paragraphs how the plan at issue failed to conform to the stormwater, grading and erosion control standards at issue.

In comparison, in *Warwick,* we held that a property owner's application was deemed approved as filed where the township's denial letter which incorporated by reference four documents, but only attached three, failed to comply with section 508(2) of the MPC. Two of the three attached documents did not cite to any ordinance provisions justifying the denial. The third document, which included forty-two objections, failed to meet the requirements of section 508(2). Specifically, some of the objections did not cite to any ordinance or statute, and, for those objections that did cite a specific ordinance provision, the letter did not state that the plan did not meet those requirements or explain how the plan failed to meet those requirements. The case before us is more akin to *Warwick* in that, here too, the incorporated document fails to meet the requirements of section 508(2), and is distinguishable from *Advantage,* in which the incorporated document included precise information to comply with the requirements of section 508(2).

because that section is not material to the Application. Specifically, section 302.2, as referenced in the Stipulation and Agreed Order, addresses the construction of greenhouses/building coverage, whereas the Application proposes no new construction but, instead, concerns a lot line change only.[7] Therefore, because the incorporated Stipulation and Agreed Order fails to cite with specificity to the section of the ordinance violated and fails to specify the defects found in the Application, the Board's decision cannot satisfy the requirements of section 508(2). *See Warwick; Whiteland Manor Homes.* Consequently, I would reverse the trial court's decision and hold that the Application should be deemed approved as filed.[8] Section 508(3) of the MPC, 53 P.S. § 10508(3) (stating that failure of the agency to render a decision in the required manner shall be deemed an approval of the application in terms as filed).

### Due process

Moreover, even if I were to decide not to reverse the trial court's determination, because I believe Van Wingerden was denied

due process, I would, at the very least, vacate the trial court's order and remand this matter to the trial court to remand to the Board to conduct hearings which afford Van Wingerden his due process rights.

Van Wingerden argues that imposition of condition numbers 4, 5 and 6 violated his due process rights by restricting the use of his property without notice and an opportunity to be heard.[9] The trial court disagreed, holding that Van Wingerden had notice of Hines' Application. However, Van Wingerden maintains that notice of the Application *for a lot line change* was insufficient to satisfy due process because it gave him no reason to believe that any property other than that subject to the lot line change would be involved. Additionally, Van Wingerden points out that he was denied the opportunity to be heard by presenting evidence before the Board. I agree with Van Wingerden.

In the Application, Hines proposed no new construction. Hines sought nothing more than permission to change lot lines

7. I could not locate a copy of section 302.2 of the Ordinance prior to amendment on July 18, 1989, anywhere in the record. However, based on the Stipulation, that section apparently relates strictly to a fifteen percent building coverage restriction, and neither the Township nor the Board asserts that section 302.2 prior to amendment on July 18, 1989, concerns lot line changes. Thus, section 302.2 is not material to the Application here.

8. Although I would reverse the trial court and deem the Application approved without any conditions, alternatively, at the very least, I would strike condition numbers 4, 5 and 6, and, thus, I would reverse the trial court to the extent that it upheld those conditions.

9. The constitutional guarantee of due process is as equally applicable to administrative proceedings as it is judicial proceedings. *Gaudenzia, Inc. v. Zoning Board of Adjustment,* 4 Pa.Cmwlth. 355, 287 A.2d 698 (1972). Due

process requires that there be notice and an opportunity to be heard. *McKean Public Sewer Association v. Pennsylvania Infrastructure Investment Authority,* 796 A.2d 379 (Pa. Cmwlth.2002). In concluding that Van Wingerden has not been denied due process, the majority states that, but for the Stipulation, the Board's ruling on the lot line adjustment would not have impacted Van Wingerden. Thus, the majority concludes, "[t]hat Van Wingerden did not foresee the subsequent ramifications of that Stipulation does not mean there has been a denial of due process." (Maj. op. at 925.) I strongly disagree with this conclusion; indeed, forseeability has no relevance to whether there has been a denial of due process. Moreover, the majority's perception that the Stipulation controls the decision on Hines' Application is erroneous. Again, the Application is for a lot line change only; "Hines' Application did not propose the construction of any additional greenhouses or other structures." (Maj. op. at 922.)

by combining a portion of Tax Map Parcel (TMP) 34–4–45, which is owned by Van Wingerden, with TMP 34–4–49, the adjacent land owned by Hines. Nevertheless, the Board's decision imposed conditions that related to the construction of greenhouses and burdened portions of Van Wingerden's property that were not involved in the request for a lot line change.[10] Before property may be so burdened, due process requires that the owner receive proper notice and an opportunity to be heard. *McKean Public Sewer Association v. Pennsylvania Infrastructure Investment Authority*, 796 A.2d 379 (Pa.Cmwlth.2002). However, my review of the record reveals that Van Wingerden was not afforded notice that *this part of his property* would be affected, and he was denied the opportunity to present evidence

before the Board at any hearings on Hines' Application. This constitutes a denial of due process that invalidates the Board's decision. Accordingly, although I believe reversal is proper, at the very least, I believe this court should vacate the trial court's order and remand this matter to the trial court to remand to the Board to conduct hearings affording Van Wingerden the due process he thus far has been denied.[11]

President Judge COLINS and Judge SMITH–RIBNER join in this dissent.

---

10. The Application proposed to transfer 17.22 acres from TMP 34–4–45, which currently contains 75.15 acres, to TMP 34–4–39, which currently contains 19+ acres. TMP 34–4–39 has 12.041 acres of existing plastic-covered greenhouses. (Board's decision.)

The five parcels subject to the Stipulation contain a total of 140 acres. The Board determined that the Stipulation permits a maximum of 21 acres of plastic-covered greenhouses on the 140 acres and that 80 acres of open lot are needed to comply with the Stipulation. (Board's condition nos. 3–6.) Consequently, the Board decided that at least 80 acres must be "set aside" and that this "80 acre tract may be shown *on any of the parcels, or a combination thereof*, that were listed in the [S]tipulation and [Agreed O]rder." (Board's condition no. 5) (emphasis added). Additionally, the 80 acre tract must be shown on the final plans by heavy line or cross hatching; the final plans would be released by the Township for recording once certain conditions are satisfied. (Board's condition nos. 5, 6.)

The Stipulation, as written, limits the amount of structures on the total acreage and requires that land be preserved for open space in relation to the acreage of greenhouses. The Stipulation contains no requirements regarding the precise location of the greenhouses or the open land or which party could build the greenhouses or had to maintain open space; instead, the Stipulation grants the parties flexibility on these issues. While

the Board's conditions may not change the total acreage of structures to built, the Board's conditions restrict the flexibility permitted in the Stipulation to determine precise locations in the future and, thus, may change who can build those structures and the location of the structures and the open space. Thus, by requiring that the location of the land to be "set aside" be designated in a plan that will be recorded, the Board seeks to rewrite the Stipulation and Agreed Order, which the Board contends is controlling.

Finally, Van Wingerden argues that the trial court erroneously concluded that, by requiring the signatures of all owners involved in the lot line change, the Board did not deny Van Wingerden due process. Van Wingerden argues that, because he could be compelled by the sales agreement to sign the final plans embodying the Board's conditions and, thus, acquiesce in the Board's conditions, and because he maintains the conditions are inconsistent with the Stipulation and Agreed Order, Van Wingerden should have been given the opportunity to present evidence regarding the sales agreement, the interpretation of the Stipulation and the adverse impact of the Board's "set aside" condition. I agree. Notice and an opportunity to be heard are to be given *before* property rights are affected by any zoning decision imposing conditions; simply requiring the affected property owner to sign plans after the fact is insufficient to cure any defects in the process due.

11. Based on my resolution of Van Wingerden's first three arguments, I would not find it necessary to address Van Wingerden's remaining arguments.